**STATE of Iowa, Appellee,**

v.

**William Charles HELM, Jr., Appellant.**

No. 91–1398.

Court of Appeals of Iowa.

May 25, 1993.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellant Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., John Sarcone, County Atty., and Nan Horvat, Asst. County Atty., for appellee.

Heard by HAYDEN, P.J., HABHAB, J., and KEEFE, Senior Judge.*

KEEFE, Senior Judge.

Defendant William Charles Helm, Jr., was charged with first degree murder, under Iowa Code section 707.2 (1991), in connection with the death of his wife Susan Helm.

William and Susan were married in January 1989. The marriage was a stormy one. They had a child, William Charles Helm III, also known as Chucky, in August 1989. The couple moved to a house at 3912 54th Street in Des Moines in October 1989. Police officers were called to the residence in January 1990 in response to a domestic quarrel. William pled guilty to a charge of domestic abuse as a result of this incident.

William and Susan separated in July 1990 and William moved to an apartment. Susan filed for divorce, and they became involved in a custody dispute. After William had moved out, neighbors saw him go into Susan's house when she was not at home. Sometime during the summer of 1990 Susan began seeing her first husband, Brian Dill, also known as Brian Bower.

Susan was babysitting for a co-worker, Michelle Nwabudike, on the evening of September 1, 1990. Dill testified he called Susan about 1:00 a.m. that night to ask for a ride home from work. Susan told him she expected company that evening, but gave no details. Nwabudike stopped by to pick up her children at about 2:15 a.m.

William and his step-brother, Toby Bozarth, went to Susan's house at about 10:30 a.m. on September 2, 1990. Derrick, Susan's child from her marriage with Dill, opened the door for them. The men found Susan dead in her bedroom. William touched Susan on the neck and on the wrist to check for a pulse. They then called the police.

Police officers found no sign of a forced entry into the house. They decided to check Susan's body for fingerprints by building a tent around the body and filling the enclosed area with vapors of cyanoacrylite, the active ingredient of Super Glue. This is known as a "super gluing" process. By this process, police officers found a latent palm print on Susan's abdomen. The palm print was matched to that of William. The "super gluing" process is a relatively new technique.

The police officers' investigation also discovered shoe prints on the sheet under Susan's body. The prints were consistent with those made by New Balance athletic shoes owned by William. Also, a scientific test showed the prints were made with a material consistent with used motor oil. The same material was found on William's shoes. William worked at a Car-X Muffler and Brake Shop and his duties included changing motor oil. William testified the shoe prints must have gotten on the sheets in August 1990 when he had sexual relations with Susan with his shoes on.

The autopsy of Susan's body revealed she had died by ligature strangulation. The medical examiner testified a garrote or thin electrical cord was most likely the instrument of death. In a search of William's apartment, police officers found a garrote among his military gear in an army duffel bag. William admitted he purchased the garrote while stationed in Germany.

Six days after the murder William told a police officer he had a key to the house.

* Senior Judge from 1st Judicial District serving on this court by order of the Iowa Supreme Court.

Later, after he was arrested, he denied having a key. William testified he talked to Susan on the telephone at about 5:00 p.m. on September 1, 1990, and they agreed he would come over on the morning of September 2 to pick up some automotive tools. He stated he spent the evening of September 1 at his mother's house. He denied killing Susan.

This case was tried before a jury. The jury returned a verdict on July 19, 1991, finding William Helm guilty of first degree murder. He was sentenced to life imprisonment. William appeals.

■■■ I. Defendant first claims that his conviction for first degree murder is not supported by substantial evidence and the trial court erred in overruling his motion for judgment of acquittal. This court's review is for errors of law. Iowa R.App.P. 4. All the evidence reviewed must be in the light most favorable to the State, including legitimate inferences and presumptions which may be fairly and reasonably deduced. *State v. Hall,* 371 N.W.2d 187, 188 (Iowa App.1985).

■ This court should affirm if there is substantial evidence in the record to support the first degree murder charge. Substantial evidence is such evidence that "could convince a rational trier of fact that defendant is guilty of the crime charged beyond a reasonable doubt." *State v. Le-Gear,* 346 N.W.2d 21, 23 (Iowa 1984).

In this case, in Instruction No. 9, the court gave the jury the usual instruction on credibility (Uniform Jury Instruction No. 100.9). In Instruction No. 14, the court gave the marshaling instruction on murder in the first degree (Uniform Jury Instruction No. 700.1). The jury was instructed that the State must prove all the elements of murder in the first degree. This included: (1) that on or about September 9, 1990, defendant strangled Susan; (2) that Susan died as a result of being strangled; (3) the defendant acted with malice aforethought; and (4) the defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Susan.

■ Since 1979 the Iowa courts have held that in a criminal proceeding there is no distinction between direct and circumstantial trial evidence in testing evidentiary sufficiency. *State v. O'Connell,* 275 N.W.2d 197, 205 (Iowa 1979); *State v. Hillsman,* 281 N.W.2d 114, 115 (Iowa 1979); *State v. Howard,* 284 N.W.2d 201, 203 (Iowa 1979); and *State v. Harrington,* 284 N.W.2d 244, 247 (Iowa 1979). *See also State v. Moses,* 320 N.W.2d 581, 586 (Iowa 1982). This in no way relieves the State of its burden of proof, which is beyond a reasonable doubt.

In this case the record showed the stormy relationship between the parties, including domestic abuse, and that they were going through a bitter divorce and a child custody dispute. The evidence showed the manner that Susan died, and the fact the defendant possessed an instrument that could have produced a ligature strangulation, which the pathologists opined was the cause of death. Also, the results of the "super glue" process produced a latent palm print on Susan's abdomen, which was identified as defendant's.

The shoe prints found on the sheet under Susan's body were identified as "highly probable" as being the defendant's. Three or four shoe prints came from shoes similar to those seized from defendant. Microscopic particles found on the sheet and defendant's shoes were of a type that would likely come from a person who worked in a garage or someplace where they use oxides, such as used oil and "slag" produced by welding. Cynthia Fitzsimons, the microscopic scientist, opined that she was "struck" by the similarity of the dirt found on the sheet and on defendant's shoes. Defendant, at the time in question, worked at a muffler and brake shop. His job involved changing oil and welding.

At the instruction of her therapist, Susan kept a daily journal, and this disappeared after her death. Defendant knew of the journal and previously attempted to take it from her. Defendant gave conflicting statements as to whether he had a key to Susan's home. He denied touching her

body anywhere but on the neck and wrist. We also note defendant's alleged reason for needing someone to come with him to Susan's home to pick up tools. This is when the body was found.

Defendant testified and denied any part in Susan's death. He further stated his belief that Susan's former husband, Brian Dill, was the murderer and his reasons for that belief.

The jury had the opportunity to hear all the evidence and determine what testimony, in their opinion, was most credible. The jury is not required to accept the defendant's version of the events. Substantial evidence to support a verdict can be present, even if there is substantial evidence to the contrary. *State v. Frake*, 450 N.W.2d 817, 818–819 (Iowa 1990).

Deliberation and premeditation may be shown by circumstantial evidence in one of three ways:

(1) Evidence of planning activity of the defendant which was directed toward the killing;

(2) Evidence of motive which might be inferred from prior relationships between defendant and the victim; and

(3) Evidence regarding the nature of the killing.

*State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984). Deliberation and premeditation need not exist for any particular length of time. *Id.*

While there is little evidence of planned activities in the case, defendant did have an instrument that could have been the murder weapon. The prior relationship between the parties was clearly established. The nature of the killing was testified to by the pathologists. The jury could have reasonably concluded from the evidence that defendant had sufficient opportunity to weigh in his mind, contemplate, and consider the consequences of his acts. *See Wilkens*, 346 N.W.2d at 20; *State v. Freie*, 335 N.W.2d 169, 172 (Iowa 1983).

The evidence, viewed in the light most favorable to the verdict, sufficiently establishes beyond a reasonable doubt the elements of first degree murder.

II. Defendant next argues that the trial court erred by allowing testimony of Michelle Nwabudike about an incident which occurred in 1989 at her home which involved Susan, her child Derrick, and defendant.

Again, our scope of review is for the correction of errors of law. On evidentiary issues we review for a abuse of discretion. *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985). To show an abuse of discretion, it must be shown the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976); *State v. Aricivia*, 495 N.W.2d 364, 367 (Iowa App. 1992).

The record reflects that defendant's attorney did not object to this testimony until the witness had generally outlined the situation. Counsel then made a voir dire examination to formulate an objection that was overruled. His objection was based on remoteness.

The incident concerned Susan being at Nwabudike's home with Derrick, her son by a prior marriage. Susan stated she was under orders from the defendant not to allow Derrick to eat anything. Derrick did eat, and Susan attempted to hide it from defendant because of her fear of how defendant would react.

The incident occurred a little over a year before the murder. It was not offered to show the consequences of the incident, only to show Susan's fear of defendant, even if Derrick was her child, not his. They were in the process of a divorce and she was eight months pregnant at the time, and her fear was evident.

A remoteness objection raises the issue of relevancy. *State v. Engeman*, 217 N.W.2d 638, 639 (Iowa 1974). The test is whether the evidence offered would render the desired inference more probable than it would be without the evidence. *Id.* Such evidence should not be so remote as to have little probative value. *State v.*

*Sharkey,* 311 N.W.2d 68, 70 (Iowa 1981). Whether evidence which is otherwise relevant should nevertheless be excluded due to remoteness is a decision which rests in the sound discretion of the trial court. *Id.* We find no abuse of discretion as to this evidence.

III. Defendant's final contention is that his trial counsel was ineffective in his representation. He claims his attorney failed to object to certain evidence of prior bad acts after the trial court reversed itself and allowed such testimony into evidence. Originally the court granted defendant's motion to suppress.

We decline to consider this claim on direct appeal. The record is not sufficiently complete on this issue. Defendant's attorney should be given an opportunity to explain his failure to object, particularly in light of his success at the motion level. This issue is better suited for postconviction relief under Iowa Code chapter 663A. *See State v. Axline,* 450 N.W.2d 857, 860 (Iowa 1990); *State v. Rawlings,* 402 N.W.2d 406, 408 (Iowa 1987).

Defendant's conviction for first degree murder is affirmed.

**AFFIRMED.**