# IN THE COURT OF APPEALS OF IOWA

No. 15-1542
Filed November 9, 2016

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**SCOTT CARL FISTER,**
 Defendant-Appellant.

_____

  Appeal from the Iowa District Court for Sac County, Kurt J. Stoebe, Judge.


  The defendant appeals his conviction for sexual abuse in the third degree.

**CONDITIONALLY AFFIRMED, SENTENCE VACATED, AND REMANDED.**


  Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

  Thomas J. Miller, Attorney General, and Elisabeth S. Reynoldson, Assistant Attorney General, for appellee.


  Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Scott Fister was convicted of sexual abuse in the third degree, in violation of Iowa Code sections 709.1, 709.4(1)(b)(3)(b), and 709.4(1)(b)(3)(d) (2005), arising out of sexual contact with his niece, K.S., when she was age fifteen. The district court sentenced Fister to an indeterminate term of incarceration not to exceed ten years with a mandatory minimum term of seven years. The district court also sentenced Fister to lifetime supervision as a sex offender pursuant to Iowa Code sections 901.3(13) and 903B.1. Fister raises several claims in this appeal. He challenges the sufficiency of the evidence supporting his conviction. He argues the district court abused its discretion in denying his motion for new trial. Finally, he contends his sentence of lifetime supervision was imposed in violation of the Ex Post Facto Clause of the Federal Constitution. We address each of the claims in turn.

I.

We review Fister's challenge to the sufficiency of the evidence for the correction of legal error. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011); *State v. Sudbeck*, No. 15-0596, 2016 WL 3003407, at *2 (Iowa Ct. App. May 25, 2016). Under this standard, we will uphold the jury's verdict if it is supported by substantial evidence. *See State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). "Substantial evidence to support a verdict can be present, even if there is substantial evidence to the contrary." *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993). We consider all evidence, "not just that which supports the

verdict." *State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). However, we review all of the evidence, "including legitimate inferences and presumptions that may fairly be deduced from the evidence, in the light most favorable to the State." *Sudbeck*, 2016 WL 3003407, at *2.

The State bears the "burden to prove every fact necessary to constitute the claims with which the defendant is charged," and the State's evidence "must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture" to be substantial. *Id.* Where, as here, the marshaling instruction is given without objection, the instruction is the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). Here, the marshaling instruction provided as follows:

> The State must prove all of the following elements of Sexual Abuse in the Third Degree:
> 1. That between May 1, 2005, and April 30, 2006, the Defendant performed a sex act with [K.S.].
> 2. The Defendant performed the sex act with [K.S.] when [K.S.] was 14 or 15 years old and either of the following:
>    a. [K.S.] was related to Defendant by blood or affinity to the fourth degree, or
>    b. Defendant is four or more years older than [K.S.].
> 3. The Defendant and [K.S.] were not then living together as husband and wife.
> If the State has proved all of the elements, the Defendant is guilty of Sexual Abuse in the Third Degree.
> If the State has failed to prove any of the elements, then the Defendant is not guilty of Sexual Abuse in the Third Degree.
> A nephew or niece and their uncle are related within the fourth degree of affinity.

The marshaling instruction was a correct statement of the elements of the offense. *See* Iowa Code § 709.4(1)(b)(3)(b), (d).

Turning to the evidence presented, the record reflects the following. Fister is married to K.S.'s mother's sister. Fister has known K.S. her entire life. Their

families were very close and spent a significant amount of time together. K.S.'s family frequently visited the Fisters at the Fisters' home where they would hang out, watch television, and play games. Some members of the families hunted and fished together. On occasion, K.S. spent the night at Fister's home.

The offense conduct occurred between May 1, 2005, and April 30, 2006, when K.S. was fourteen or fifteen years old. K.S. said she was able to recall the general time period because the abuse started during her last season of softball, which was the summer between her eighth and ninth grade years. She testified Fister repeatedly touched her vagina and breasts—both above her clothing and skin to skin. She also testified Fister had her rub his penis. She testified the abuse happened on many occasions.

K.S. testified some of the abuse occurred in the Fister's home. Fister and K.S. often sat next to each other on Fister's couch while the families were watching television. K.S. testified she covered herself with a blanket and Fister covered himself with the same blanket. He used his toes and fingers to touch her vagina. K.S. testified this happened even when there were other family members in the room. This happened about ten to fifteen times over the course of 2005. Fister denied any sexual touching. Fister's son testified at trial. He disputed K.S. was ever alone on the couch with Fister. Fister's wife also testified at trial. She did not recall Fister and K.S. ever being under a blanket together while on the couch. Fister's wife also testified K.S. never seemed upset or uncomfortable in their home.

K.S. testified about other acts also occurring in the Fisters' home. K.S. testified when she spent the night at Fister's home, she sometimes slept on the

couch. Fister came out to the couch on some mornings before the rest of the family awoke. According to K.S., Fister curled up behind K.S. on the couch, wrapped his arm around her, and touched her breasts and vagina, both under and over K.S.'s clothes. K.S. testified Fister also pulled down her pants and licked her vagina, telling her he "liked doing it." K.S. stated she told Fister to stop, but he kept touching her. Fister denied any sexual touching. Fister's wife and sons testified K.S. did not sleep on the couch when she slept over; they said she slept in one of the son's rooms.

K.S. testified sexual abuse occurred when the family went hunting. Usually only the men in the family went hunting, but K.S. enjoyed hunting and went with them. When the family went duck hunting, the hunting party slept in a boat at night after setting up decoys. Fister slept by the heater, and K.S. slept next to him. K.S. claimed Fister fondled her breasts and vagina. Fister disputed this, testifying the two slept back-to-back rather than "spooning." Fister's elder son testified that he did not sleep while in the boat, that he would have been awake while the sexual abuse allegedly was occurring, and that it thus could not have occurred.

K.S. says her uncle also sexually abused her on deer hunts. She said they were alone in Fister's vehicle after dropping off other members of the hunting party. K.S. testified Fister touched her vagina both under and over the clothes and had K.S. touch his penis over Fister's hunting gear. K.S. testified Fister also had her touch his penis over his hunting gear when the two got out of the truck and set up for the hunt. Fister's sons disputed K.S. and their father were ever alone in the truck together. Because of their age during the relevant

time period, they testified, the law required them to be within 100 yards of their father at all times during the hunt. One of Fister's sons is the same age as K.S.

This case turned on the credibility of the witnesses. The victim testified Fister sexually abused her on multiple occasions. Fister and members of his nuclear family denied Fister would have engaged in such conduct and denied Fister would have had the opportunity to perform the sex acts. No contemporaneous documents, records, reports, or physical evidence corroborates K.S.'s testimony. Of course, none was required for the State to prove its case. *See State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned any notion that a rape victim's accusation must be corroborated."). Conversely, no documents, records, reports, or other evidence refutes K.S.'s testimony. As a general rule, credibility determinations are the province of the jury. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury [was] free to believe or disbelieve any testimony as it chooses and give weight to the evidence as in its judgment such evidence should receive."). We see no reason to disturb the jury's credibility determination and verdict in this case.

Fister contends this is one of the rare cases where we should disregard the victim's testimony. Even though credibility determinations generally are left to the jury, there are some circumstances under which a reviewing court will treat a witness's testimony as a nullity:

> This court has gone its full length to protect the right of jury trial against encroachment by the courts under any guise, and one of the rights of jury trial is the right to have the credibility of the witness determined by the jury. Generally speaking there are no limitations upon this rule, but there are limitations upon the

application of it. The testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.

*Graham v. Chi. & Nw. Ry. Co.*, 119 N.W. 708, 711 (Iowa 1909). In the context of sex abuse cases, the leading case, and perhaps only case, is *State v. Smith*, 508 N.W.2d 101 (Iowa 1993). In that case, the court held there was insufficient evidence where the victim's "testimony as a whole is self-contradictory, lacks experiential detail, and describes scenes . . . that border on the surreal." *Smith*, 508 N.W.2d. at 104. In addition, the *Smith* court noted there was strong evidence of the victim's motive to fabricate allegations. *See id.* at 105.

This case is readily distinguishable from *Smith* and is not one of the rare cases in which we are compelled to disregard the jury's credibility determination. First, there is post-abuse conduct evidencing Fister's "passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981). Several years after the conduct at issue, K.S. left for college. On one occasion, as she was driving home from college, her car blew out a tire. She called Fister for help. After he replaced the tire, the two talked. The two then kissed. Fister admitted to kissing his niece, although there were inconsistencies between K.S.'s and Fister's version of events. According to K.S., Fister kissed her. Fister, when talking with police, also stated he initiated the kiss. But at trial, he stated K.S. kissed him.

Second, in this case, it is the defendant's credibility that is in doubt. After K.S. reported the sex abuse, the local police interviewed Fister. When the police asked Fister about his relationship with K.S., his first answer was, "[S]he was eighteen." Fister gave different explanations during the interview in response to

the police informing him of K.S.'s allegations. In turn, he denied touching, then admitted to cuddling, then denied sexual intent, then admitted to perhaps accidental touching the victim's vagina and breasts, then denied touching, then admitted to tickling the victim's thighs and up her shirt with perhaps accidental touching of the victim's vagina and breasts. The police interview was played to the jury. The statements made during the interview were contrary to his trial testimony. In his police interview, Fister stated he could have accidentally touched K.S.'s genitals, but at trial he denied any touching. When talking with police Fister admitted to holding and snuggling K.S. when they were sleeping next to each other on the duck hunts, but he denied this a trial, stating they slept back-to-back. During the police interview, Fister stated he and K.S. had kissed "a few times." At trial, Fister admitted to the single kiss but stated he did not recall any others. In this case, unlike *Smith*, it was the defendant, and not the victim, whose testimony was inconsistent and not credible. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense."); *State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) (stating "a defendant's inconsistent statements are probative circumstantial evidence from which the jury may infer guilt"); *State v. Schrier*, 300 N.W.2d 305, 310 (Iowa 1981) (stating the jury could have inferred guilt from the many inconsistent accounts the defendant gave as to where and in what condition he found the victim); *State v. Smith*, No. 07-1406, 2008 WL 3916768, at *3 (Iowa Ct. App. Aug. 27, 2008) ("A defendant's inconsistent statements are probative

circumstantial evidence from which the jury may infer guilt."); *State v. Hythecker*, No. 01-1048, 2002 WL 987966, at *3 (Iowa Ct. App. May 15, 2002) (finding the defendant's varying statements supported an inference of guilt).

Third, Fister overstates the strength of the testimony of his witnesses. His testimony and his nuclear family's testimony is not irreconcilable with K.S.'s testimony nor does it prove it was impossible for Fister to have the motive and opportunity to commit the acts of sex abuse. For example, Fister contends his son's testimony establishes K.S. and Fister were never alone during deer hunts. However, Fister admitted to the police there were times he and K.S. were alone together during deer hunts. By way of another example, Fister's older son denied his father would ever kiss K.S. But Fister admitted to kissing K.S., possibly on multiple occasions. Fister's son testified he stayed awake during the duck hunts. But Fister admitted he cuddled and touched K.S. during the duck hunts. If anything, the testimony shows Fister was not honest with his own family regarding his admitted conduct.

This is not one of the rare cases in which the victim's testimony was so impossible and absurd and self-contradictory that it should be deemed a nullity by the court. It was for the jury to sort out the credibility issues, and it did so, implicitly finding the victim more credible than the defendant and the defendant's witnesses. Crediting her testimony, there was sufficient evidence to support the verdict. The district court did not err in denying the defendant's motion for judgment of acquittal.

II.

Iowa courts have the discretion to grant a new trial when "the verdict is contrary to law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). The Iowa Supreme Court has determined this to mean "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "We review a trial court's ruling on a motion for new trial for an abuse of discretion." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006); *see State v. Scalise*, 660 N.W.2d 58, 66 (Iowa 2003). "However, we review a claim that the district court failed to apply the proper standard in ruling on a motion for new trial for errors at law." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016); *see State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007).

Prior to sentencing, Fister moved for new trial and to arrest judgment, contending the verdict was against the weight of the evidence. Fister contends the district court abused its discretion in denying his motion because the district court failed to independently evaluate the credibility of the witnesses. The district court ruled as follows:

> The Court will deny the motions for new trial and motion for arrest of judgment. The Court has previously outlined its rationale for denying the motion for judgment of acquittal. I would only state that the weight of the evidence, as counsel knows, is not determined on the number of witnesses or the length of time that any case takes to present. The weight of the evidence is a determination by the jury of what is—is most credible evidence and then determining whether there is evidence beyond a reasonable doubt. It is the peculiar and specific function of the jury to determine the credibility of the witnesses. The jury did so in this case. And once it had completed its determination of credibility, it had adequate evidence before it to reach the conclusion that it did.
> The Court, therefore, will deny both motions for new trial and motions for arrest of judgment.

In ruling on a motion for new trial, the district court must apply a weight-of-the-evidence standard rather than a sufficiency-of-the-evidence standard. *See State v. Noll*, No. 12-0166, 2013 WL 85932, at *4 (Iowa Ct. App. Jan. 9, 2013) ("The weight-of-the-evidence analysis is not the equivalent of a sufficiency-of-the-evidence analysis. The weight-of-the-evidence analysis 'is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other.'" (quoting *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006)); *State v. DeMichelis*, No. 05-0962, 2006 WL 2267831, at *2 (Iowa Ct. App. Aug. 9, 2006) (stating district court's reliance on its previous rulings for sufficiency of the evidence when making a determination if a new trial should be granted "is problematic because the incorrect standard of review was inherently incorporated and applied"); *State v. Curtis*, No. 04-1878, 2005 WL 1398337, at *2 (Iowa Ct. App. June 15, 2005) (finding while the district court properly used the sufficiency-of-the-evidence standard when reviewing motions for acquittal during trial, the court impermissibly used those same standards when determining a motion for new trial based on weight of the evidence).

In addition to applying the correct legal standard, the district court must make an independent evaluation of the evidence; the district court becomes an independent trier of fact. *See Scalise*, 660 N.W.2d at 65; 58 Am. Jur. 2d *New Trial* § 383. The district court does not view the evidence in a light most favorable to the verdict, rather, it "must independently consider whether the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted." *Scalise*, 660 N.W.2d at 65–66; *see* 58 Am. Jur. 2d *New*

*Trial* § 383 ("Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict as the trial judge is free to weigh the evidence himself or herself and need not view it in the light most favorable to the verdict winner."). The district court errs by failing to "engage in any independent evaluation of the evidence or make any credibility determinations of the witnesses." *Scalise*, 660 N.W.2d at 66; *Curtis*, 2005 WL 1398337, at *2 (vacating the district court's ruling on motion for new trial where the record was "devoid of any evidence suggesting the district court made an independent evaluation of the evidence or assessed the credibility of the witnesses presented at trial").

We conclude the district court erred in denying Fister's motion for new trial. First, it appears the district court may have applied the wrong standard of review. While the district court does use some language in its ruling on Fister's motion differentiating between the two standards, the district court focuses on whether the jury had "adequate evidence before it to reach the conclusion it did." Additionally, the district court referred back to its rationale for denying the sufficiency-of-the-evidence motion, which Iowa courts have made clear is the wrong standard to apply when a defendant makes a motion for new trial. *See, e.g.*, *DeMichelis*, 2006 WL 2267831, at *2; *Curtis*, 2005 WL 1398337, at *2. Second, and more clearly, the district court failed to analyze the evidence and weigh the credibility of the witnesses independently. The district court deferred to the jury's credibility determination. While deference to the jury is required under a sufficiency-of-the-evidence test, it plays no role in a contrary-to-the-weight-of-the-evidence test. The district court must independently consider the

credibility of the witnesses and the merits and demerits of the evidence. The district court's ruling on the motion for new trial does not evidence the district court engaged in the required independent analysis. Denial of the motion thus constitutes an error of law. *See Ary*, 877 N.W.2d at 707; *Scalise*, 660 N.W.2d at 66; *Ellis*, 578 N.W.2d at 659; *DeMichelis*, 2006 WL 2267831, at *2; *Curtis*, 2005 WL 1398337, at *2.

For the foregoing reasons, we conditionally affirm the jury's verdict but vacate the district court's ruling on the defendant's motion for new trial and remand the case "for the purpose of allowing the district court to rule on [Fister's] motion applying the correct weight-of-the-evidence standard." *Curtis*, 2005 WL 1398337, at *2; *see Nitcher*, 720 N.W.2d at 560; *DeMichelis*, 2006 WL 2267831, at *2. "If on remand the district court determines [Fister's] motion for new trial should be overruled, the judgment and sentence [should] stand affirmed. If, on the other hand, the district court grants the motion, [Fister's] judgment and sentence [should] be vacated, and a new trial shall be granted." *Curtis*, 2005 WL 1398337, at *2. We do not opine on whether the verdict was against the weight of the evidence.

### III.

Fister contends his sentence of lifetime supervision as a sex offender is an unconstitutional ex-post-facto sentence. We review a claim a sentence is illegal for corrections of errors at law. *See State v. Morris*, 416 N.W.2d 688, 689 (Iowa 1987). An illegal sentence can be corrected at any time. *See State v. Davis*, 544 N.W.2d 453, 455 (Iowa 1996).

There are two elements that must be present for a criminal law to be an ex post facto law: it must (1) be retrospective and (2) "alter the definition of criminal conduct or increase the penalty by which a crime is punishable." *State v. Lathrop*, 781 N.W.2d 288, 295 (Iowa 2010). The Iowa Supreme Court has said the lifetime parole statute is a criminal or penal law for ex post facto purpose. *See id.* at 297. To determine if an act was applied retrospectively, the court looks to see if it was applied to an offense committed prior to the statute's effective date. *See id.* The court in *Lathrop* also determined that the lifetime parole statute increases the penalty of the defendant's crime. *See id.* at 298.

The facts and circumstances of this case present an interesting question with respect to sentencing. The jury was instructed the State had to prove Fister committed a sex act with K.S. between May 1, 2005 and April 30, 2006. The jury returned a general verdict, which did not specify when the sexual abuse occurred. We have concluded there was sufficient evidence in support of the conviction. The district court imposed the special sentence pursuant to Iowa Code section 903B.1. The effective date of this provision was July 1, 2005. Because the jury returned a general verdict, it is unknown whether the jury believed the offense conduct occurred only before the effective date, only after the effective date, or both before and after the effective date. The State concedes it is impossible to determine what the jury found. Under the circumstances, the State concedes the district court should not have sentenced Fister to a special sentence of lifetime parole because the jury may have found the offense conduct predated the effective date of the special sentence. We

agree.  This portion of the sentence should be vacated.  *See* Iowa R. Crim. P. 2.24(5)(a) ("The court may correct an illegal sentence at any time.").

## IV.

For the foregoing reasons, we conditionally affirm the defendant's conviction, we vacate the special sentence imposed pursuant to Iowa Code section 903B.1, and we remand this matter for further proceedings not inconsistent with this opinion.

**CONDITIONALLY AFFIRMED, SENTENCE VACATED, AND REMANDED.**