# IN THE COURT OF APPEALS OF IOWA

No. 19-0379
Filed September 23, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DEONDRA THOMAS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

Deondra Thomas appeals following his convictions for murder in the first degree and possession of a firearm as a prohibited person. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

Deondra Thomas appeals following his convictions for murder in the first degree and possession of a firearm as a prohibited person, both stemming from the shooting death of Jason Roberts. He challenges the sufficiency of the evidence establishing his identity as the shooter, malice aforethought, and premeditation. Thomas also claims the district court abused its discretion when it admitted certain evidence. And Thomas asks us to remand his case so that he may establish the jury was not drawn from a fair cross-section of the community. We affirm.

## I. Facts and Prior Proceedings

Sometime in the spring of 2018, Aaron Robinson encountered Thomas at a local barbershop.[1] The two men had known each other for more than twenty years. Thomas showed Robinson a handgun and said, "I wish a motherfucker would play with me. I'll blast them."

Fast forward to the night of June 8—a skirmish broke out outside of MVP night club. It ended with a shooting.

That evening, Sylvester Todd Gordon had been operating his food-vending business on the MVP patio. His family and close friends were there to support his business. Gordon cautioned Shlaan Murray, an intoxicated MVP patron, that his mother and family were around. Gordon told Shlaan he should not be disrespectful. The two men "went back and forth, had some words." Then the two

---

[1] Robinson did not establish the timing of this encounter at trial, but a motion in limine stated the encounter occurred about two weeks prior to the June 8, 2018 shooting.

stepped away from the crowd to talk more. They resolved their disagreement and went back toward the crowd. Then Gordon saw Chad Murray, Shlaan's brother. So he told Chad about his conversation with Shlaan and assured him the issue was resolved.

Gordon returned to cooking with his friend, Roberts. Later, Gordon found himself chatting with Chad again off to the side. Shlaan, Roberts, and Chad's fiancé joined them.

Meanwhile, Robinson and a friend pulled up in a vehicle outside of MVP. They observed the scene but did not get out of the vehicle. Robinson saw Thomas—the accused in this case—walk up to the group gathered together.

Then everyone heard gunshots. Roberts was shot. And he died from his injuries.

A day or two later, Thomas and his cousin stopped by to talk to Gordon about the shooting. And then there was a second shooting: someone shot at Gordon's house—through his daughter's window.

Police investigated Roberts's murder and the shooting at Gordon's house. Ultimately, the State charged Thomas with murder in the first degree and possession of a firearm or offensive weapon by a felon. Both charges related to Roberts's killing. The State did not charge Thomas with shooting Gordon's house.

Through a motion in limine, Thomas sought to exclude testimony about his conversation with Robinson at the barbershop as well as the shooting at Gordon's home. The district court denied Thomas's motion. A jury found Thomas guilty as charged. Thomas appeals.

**II. Scope and Standard of Review**

We use differing standards of review for Thomas's various claims. We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." "[W]e will uphold a verdict if substantial record evidence supports it." We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*Id.* (alterations in original) (citations omitted).

"[W]e generally review evidentiary rulings for abuse of discretion." *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008) (citation omitted). "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. If we find an abuse of discretion, we will only reverse if prejudice is shown." *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017) (quotation marks and citations omitted).

Finally, "[w]e review constitutional questions de novo. This includes claims of systematic exclusion of a distinctive group from the jury pool . . . ." *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019) (citations omitted).

**III. Discussion**

Thomas brings several claims on appeal. He challenges the sufficiency of the evidence supporting his conviction for first-degree murder in multiple respects.

He alleges the district court abused its discretion in permitting evidence of his barbershop conversation with Robinson and the shooting at Gordon's house. And he claims we should remand his case so he may establish the jury was not drawn from a fair cross-section of the community.

### A. Sufficiency of the Evidence

We begin with Thomas's challenges to the sufficiency of the evidence supporting his conviction for murder in the first degree. He claims the evidence is insufficient to establish his identity as the shooter, malice aforethought, and premeditation.[2]

---

[2] The jury was instructed as follows:

> The State must prove all of the following elements of Murder in the First Degree under Count 1:
> 1. On or about the 9th day of June, 2018, the defendant shot Jason Roberts.
> 2. Jason Roberts died as a result of being shot.
> 3. The defendant acted with malice aforethought.
> 4. The Defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Jason Roberts.
> If the State has proved all of the elements, the defendant is guilty of Murder in the First Degree. If the State has failed to prove any one of the elements, the defendant is not guilty of Murder in the First Degree and you will then consider the charge of Murder in the Second Degree explained in Instruction No. 29.

"Where, as here, the jury was instructed without objection, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018) (citing *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) ("[Defendant] did not object to the instructions given to the jury at trial. Therefore, the jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence.")). Thomas did not object to the elements of the first-degree marshalling instruction. But he did object to the inclusion of instructions for lesser-included offenses.

*1. Identity*

We first address whether the State provided sufficient evidence to establish Thomas's identity as the shooter. Thomas emphasizes that no witness specifically testified that they saw him shoot Roberts. Nor did investigators discover forensic evidence tying Thomas to the shooting. Nonetheless, we believe the State provided ample evidence that Thomas was the shooter.

Thomas's own cousin, Delmont Thomas, provided incriminating testimony. He recounted the night of the shooting. He was parked in his vehicle outside MVP when he heard gunshots ring out. Then Thomas got in the front passenger seat of the vehicle. When Delmont asked what happened, Thomas stated that "somebody just put their hands on him," insinuating he shot someone in response. When confronted by Delmont again the next day, Thomas told his cousin that "dude put his hands on him and he shot him."

This story tracks with other witness testimony. Robinson, who knew Thomas for more than twenty years, observed the sequence of events from a car. He saw Thomas walk up to some people who were in a verbal altercation. He saw Thomas join in. He also saw Thomas had a pistol. And Robinson saw Roberts step in between Thomas and another individual. It appeared to Robinson that Roberts was trying to deescalate a confrontation between Thomas and the other person by placing himself in between them. But Thomas was aggressive toward Roberts in response. Robinson testified that's when Thomas "pulled back and arms reached and bang, bang. The people scattered . . . ."

Another witness at the scene, Chad Murray, described Thomas as having a "sinister look" that he compared to "the Joker." Then Murray heard gunfire

coming from Thomas's direction. Murray—and others in the area—ran at the sound of gunshots. But Thomas walked away methodically, like he was not surprised or startled by the shots.

Considering this evidence in aggregate, and viewing it in the light most favorable to the verdict, we conclude the State presented sufficient evidence for the jury to determine beyond a reasonable doubt that Thomas was the shooter.

*2. Malice aforethought*

Next, Thomas argues the evidence was insufficient to establish the malice aforethought element. The jury was instructed that "'Malice aforethought' is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time."[3] *Accord State v. Meyers*, 653 N.W.2d 574, 579 (Iowa 2002).

> Malice aforethought . . . is a term of art used to describe a culpable state of mind, an essential element of the offense of murder that the State must prove to the jury beyond a reasonable doubt. However, it is often impossible for a jury to determine a defendant's state of mind without the aid of inference.

*State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) (citations omitted). So district courts may instruct the jury that it may infer malice aforethought from a defendant's use of a dangerous weapon. *See id.* Here, the district court instructed the jury as such over Thomas's objection that the related instructions were confusing and misleading.[4] But Thomas does not challenge the instructions on appeal. And he

---

[3] Thomas did not object to this instruction, so it is the "law of the case for the purposes of reviewing the sufficiency of the evidence." *See Banes*, 910 N.W.2d at 639.

[4] Instruction twenty-four stated: "If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation[,] and

did not challenge instruction twenty-six, which stated, "You are instructed that a firearm is, by law, a dangerous weapon."

Because we found sufficient evidence that Thomas was the shooter, we find sufficient evidence that Thomas used a dangerous weapon, a firearm. And the jury was free to infer malice aforethought from Thomas's use of a dangerous weapon. So we find there is sufficient evidence to establish the malice aforethought element beyond a reasonable doubt.[5]

*3. Premeditation*

And finally, Thomas alleges there is insufficient evidence of premeditation to support his conviction of first-degree murder. He argues "there was no evidence that he acted with the fixed purpose to cause harm to Roberts." We disagree.

"To premeditate means 'to think or ponder upon the matter before acting.'" *State v. Roberts*, No. 18-0575, 2019 WL 1953679, at *3 (Iowa Ct. App. May 1, 2019) (quoting *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003)). "[P]remeditation need not exist for any particular length of time" and can be demonstrated through circumstantial evidence in three possible ways: "(1) Evidence of planning activity of the defendant which was directed toward the

---

specific intent to kill." Instruction twenty-five stated: "Malice aforethought may be inferred from the defendant's use of a dangerous weapon."

[5] Thomas points to the lack of any apparent motive as evidence of no malice aforethought. *See State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003) ("Although motive for the killing is not a necessary element of second-degree murder, absence of such motive may be considered on the question whether the defendant acted with malice aforethought."). But he does not explain why a lack of apparent motive would *foreclose* the jury from making a permissible inference of malice aforethought from his use of a firearm. Instead, he makes the unsupported assertion that "[t]he absence of any motive to harm Roberts should have adequately rebutted the use of the gun to create malice aforethought."

killing; (2) Evidence of motive which might be inferred from prior relationships between defendant and the victim; and (3) Evidence regarding the nature of the killing." *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993).

Here, at least two aspects of the record support a finding of premeditation. First, days before the shooting, Thomas showed a handgun to Robinson and said he hoped to use it to "blast" someone. Then, as the State points out, the evidence established Thomas shot Roberts three times with a semiautomatic pistol. And the evidence showed that this type of firearm requires the shooter to pull the trigger and release it with each shot. So the jury could determine Thomas pondered or thought about his conduct before each pull of the trigger. *See State v. Austin*, 357 S.E.2d 641, 653 (N.C. 1987) (noting "[t]he evidence indicated that in order to fire the weapon with which the victims were killed, the trigger must be consciously pulled for each shot" and further noting "[e]ven though the rifle is capable of being fired rapidly, some amount of time, however brief, for thought and deliberation must elapse between each pull of the trigger"), *cert. denied* 484 U.S. 916 (1987); c*f. Roberts*, 2019 WL 1953679, at *3. And so the jury could properly find Thomas's conduct was premeditated.

We find sufficient evidence supports Thomas's conviction for first-degree murder.

**B. Admission of Certain Evidence**

Next, Thomas contends the district court abused its discretion in admitting evidence of his encounter with Robinson at the barbershop where he displayed a gun and suggested he wanted to "blast" someone that crossed him. He also

contends the court abused its discretion in admitting evidence of the shooting at Gordon's home.

As a preliminary issue, we address error preservation. Thomas brought his challenges in a motion in limine, alleging both pieces of evidence were "clearly more prejudicial than probative." Typically "a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial." *State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000). Here, Thomas objected at trial to Robinson's testimony about the barbershop conversation, but he did not object to testimony about the shooting at Gordon's home. Even so, when a motion in limine is resolved so that the admissibility of the challenged evidence is beyond question, no objection is needed, and the district court's ruling on the motion "has the effect of a ruling." *Id.* at 569 (citation omitted). Here, the district court provided a definitive ruling and its reasoning. So, as to both claims, we believe Thomas preserved error as to whether the evidence is more prejudicial than probative.

But on appeal, Thomas argues the evidence should have been excluded under Iowa Rule of Evidence 5.404(b), which prohibits evidence of prior bad acts in certain instances. Thomas never made this argument before the district court, and the district court never ruled on the argument.[6] So this specific claim is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily

---

[6] We recognize the probative and unfair prejudicial value of evidence are weighed against each other in part three of the three-part test to determine the admissibility of prior-bad-acts evidence. *See State v. Putnam*, 848 N.W.2d 1, 8–9 (Iowa 2014). But Thomas never explicitly argued, and the court did not rule on, whether rule 5.404(b) prohibited the admission of the challenged evidence. In fact, we have found no mention of rule 5.404 in the record.

be both raised and decided by the district court before we will decide them on appeal.").

As a fallback, Thomas asks us to consider his claim within the ineffective-assistance framework. Ineffective-assistance claims are established by showing counsel failed to perform an essential duty and prejudice resulted. *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020). So an appellant's arguments under this framework necessarily differ from those made in support of a preserved claim. In cases like this one, where the appellant presents their argument primarily as though error was preserved and merely mentions ineffective-assistance as a fallback option, the appellant's argument is often insufficiently developed for our review. *See, e.g.*, *State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) (finding the record insufficient to resolve an ineffective-assistance claim raised as a fallback when the defendant "only include[ed] a cursory discussion of ineffective assistance in a footnote"). That is the case here. So we preserve Thomas's ineffective-assistance claim for possible postconviction-relief proceedings. *See id.*

We turn, then, to Thomas's preserved claim that the district court abused its discretion in failing to exclude evidence under Iowa Rule of Evidence 5.403, which provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." We address each piece of evidence in turn.

First we consider Robinson's testimony that Thomas had a gun at the barbershop and stated he wanted to "blast" someone in an altercation. This evidence has substantial probative value because it established Thomas had a desire to use a firearm in a confrontation—establishing a motive for the shooting.

And the evidence was not unfairly prejudicial. The jury was instructed,

> Evidence has been received concerning another act alleged to have been committed by the defendant. The defendant is not on trial for that act.
>     This evidence must be shown by clear proof to show motive and for no other purpose.
>     If you find the other act occurred then and only then may such other act be considered for the purpose of establishing motive.
>     You may consider whether the act was recent or remote and whether the act was similar or dissimilar to the crimes charged in this case and all other relevant factors in deciding how much weight and effect to give it.

We presume the jury followed the instructions. *See State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012). So we can be confident the jury considered Robinson's testimony about the barbershop conversation only to establish motive and not for some other improper purpose.

As to evidence that someone shot at Gordon's home two days after Roberts's killing, we also find the district court did not abuse its discretion. The State presented evidence that the same gun was used to shoot at Gordon's house and to shoot Roberts. This was a "who-did-it" case. And because Gordon was one of the people in close proximity to the shooting, he was a possible suspect. So evidence that Gordon's home was shot at—when Gordon was inside the home—with the same gun used in the killing—could help eliminate Gordon as a suspect.

Admittedly, the probative value of this evidence may have been limited. But so was the risk of unfair prejudice to Thomas.[7] No evidence tied Thomas to the

---

[7] Thomas does not argue that the evidence would inflame the jury and result in a first-degree conviction instead of some lesser-included offense. Instead he argues, "There was a substantial danger that the jury in the present case would conclude that Thomas shot both Gordon's house and murdered Roberts because

shooting at Gordon's house. In fact, when asked if he had "any facts or kn[e]w who shot at [his] house," Gordon replied, "I don't have no facts." So while the probative value of the evidence may have been low, it was not "substantially outweighed" by the risk of unfair prejudice. The district court did not abuse its discretion.

### C. Fair Cross-Section Claim

Finally, we address Thomas's request that we remand his case to the district court so he may "prove up his claim of systematic exclusion and statistical evidence of underrepresentation" because *State v. Lilly*, 930 N.W.2d 293 (Iowa 2019), *State v. Veal*, 930 N.W.2d 319 (Iowa 2019), and *State v. Williams*, 929 N.W.2d 621 (Iowa 2019), were decided after his trial. Those cases were remanded because our supreme court established a definitive methodology for assessing potential disparities in jury venires—the standard-deviation method—and held "that jury management practices can amount to systematic exclusion for purposes of article I, section 10" of the Iowa Constitution. *See Lilly*, 930 N.W.2d at 302, 307.

While Thomas did not have the benefit of *Lilly*, *Veal*, and *Williams*, which refined the *Plain* test,[8] we decline to ignore the fact that Thomas's cross-section challenge fell far short of meeting any cross-section test. The entirety of Thomas's argument at trial was as follows:

> Yes, your Honor. We are asking the court to consider re-impaneling a new jury pursuant to the case of *State v. Plain*. Under both the Sixth Amendment of the United States Constitution and article 1, section 2 of the Iowa Constitution, we identified the racial breakdown

---

the State indicated that the shooters were one in the same." This argument toes the line of conceding Thomas shot Roberts.

[8] *See State v. Plain*, 898 N.W.2d 801 (Iowa 2017).

of the prospective jury panel previously,[9] and we believe that that is not a fair cross-section of the community to enable the common sense judgment of the community serve as a hedge against overzealous and mistaken prosecution and preference to professional or perhaps over-conditioned or biased response of the judge.

We believe that the numerical standards that we have is insufficient to have my client, who is an African American, have a fair and impartial jury on this proposed panel.

. . . .

I've made my argument. I think that the court's option is to— appropriate response is to impanel a new jury and see whether or not we have a better statistical response.

But under either the federal or the Iowa constitution,[10] Thomas was required

to establish three elements:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires

---

9 Prior to Thomas's motion, the following exchange occurred in chambers:
Defense counsel: Yeah. I just in going—First things first, in going through the proposed jury panel that we received this morning so far, I count two individuals identified as being Hispanic, one individual identified not identifying any race, two identifying as a mixed race, and two identified as African American.
I may be asking during a break or recess what the statistical breakout in—I'm sorry. The last one listed is also an African American. So I may be asking the jury clerk regarding information and documentation regarding that. Number two—
Thomas: What does that mean? Regarding what their ethnicity is?
Defense counsel: Yes. And whether or not you're—
Thomas: It gonna be a problem that they're African American or Hispanic?
Defense counsel: No, no. I'm reporting that so that we can ensure that you are getting a jury of your peers as set forth under the Iowa—
Thomas: And how many of them are for—
Defense counsel: I counted two identified Hispanic, one did not identify race, one identified as mixed race, and going all the way to the end, the very last person is the third African American.

10 We note Thomas cited to article 1, section 2 of the Iowa Constitution in his motion. But the right to an impartial jury is guaranteed by article 1, section 10 of the Iowa Constitution. Still we do not interpret this misstep as a waiver of his fair cross-section claim under the Iowa Constitution.

from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Lilly*, 930 N.W.2d at 299 (quoting *Plain*, 898 N.W.2d at 822).

Thomas did not squarely address any of the three elements. Although he noted he is African American, he did not specifically identify African Americans as the distinctive group that was excluded from the jury venire. Although he mentioned the numbers of prospective jurors self-identifying as African American, "mixed race," and Hispanic, it still remains unclear which distinctive group(s) Thomas sought to identify for purposes of the first element. Thomas also made no attempt to compare the composition of the jury venire to the community.[11] And he made no attempt to establish systematic exclusion as required under the third element.

Given this record, we decline to remand so Thomas can have a second opportunity to "prove up his claim of systematic exclusion and statistical evidence of underrepresentation."

## IV. Conclusion

Thomas's conviction for first-degree murder is supported by sufficient evidence. The district court did not abuse its discretion in admitting evidence. And on this record, we decline to remand to provide Thomas another chance at a fair cross-section claim.

**AFFIRMED.**

---

[11] The State provided some data comparison. However, the burden of establishing fair cross-section claim rests with the defendant. *See Plain*, 898 N.W.2d at 821.