**STATE of Iowa, Appellee,**

v.

**Cynthia Renee SCALISE, Appellant.**

No. 01–1723.

Supreme Court of Iowa.

April 2, 2003.

Linda Del Gallo, State Appellate Defender, Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John P. Sarcone, County Attorney, and Bob DiBlasi, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

A jury convicted Cynthia Renee Scalise of possession of a controlled substance (methamphetamine) with intent to deliver in violation of Iowa Code section 124.401(1)(*b*)(7) (1999). She appeals, raising claims of ineffective assistance of counsel. She also contends the district court erred in denying her motion for new trial. We affirm in part, reverse in part, and remand.

## I. Background Facts and Proceedings.

On the morning of February 2, 2001, Des Moines police executed a search warrant at Scalise's home. They found Scalise asleep on the couch. Another individual, Melissa Farnsworth, was also present.

Scalise told police where to find the methamphetamine. The police found three baggies containing the controlled substance. They also found $346 and some "drug notes" in Scalise's purse, two scales, some baggies of marijuana, a mirror and razor blade with resin on it.

The State charged Scalise with possession of more than five grams of methamphetamine with intent to deliver, failure to affix a drug tax stamp, and possession of marijuana. Later the State dropped the drug tax stamp charge. Before trial, defense counsel informed the court that Scalise wished to plead guilty to the marijuana charge, so that charge was not tried.

Several of the officers who were involved in the search testified at the trial. They testified they found 5.87 grams of methamphetamine with a street value of approximately $500. The total found was in three amounts: 3.84 grams, 1.86 grams, and .17 grams.

According to the officers, the amount found was consistent with distribution and not merely possession for personal use. However, the officers also conceded that it was possible that someone could use five grams of methamphetamine and agreed that the amount a person consumes depends on a number of things, such as how long the person has been using and their tolerance.

There was also testimony that Scalise told one of the officers that she had been buying methamphetamine in quarter-ounce quantities for quite some time for distribution.

The State introduced other evidence to support its case that Scalise was distributing methamphetamine. For example, the officers testified about the significance of the scales that were found, but conceded that both buyers and sellers could use the scales. Buyers would use scales to make sure they were not getting "ripped off," and sellers would use scales to measure out the amount they were selling. The officers also testified that some of the notes found in Scalise's purse were consistent with drug dealing. The notes contained first names or nicknames followed by amounts. To support the State's theory that Scalise was selling more than using, one officer testified that Scalise did not have the physical characteristics of a heavy methamphetamine user—thinness.

There was evidence that methamphetamine is typically sold on the street in quantities of quarter grams, half grams, eight ball (3.54 grams), and teener (1.7 grams) quantities. None of the amounts found at Scalise's residence matched these amounts. The State attempted to counter the implication from this evidence with testimony that the State's equipment was more precise than the scales found at Scalise's residence.

One of the State's witnesses was Melissa Farnsworth, the individual at Scalise's residence when the police arrived to execute the search warrant. The State had also charged Farnsworth with possession of methamphetamine because the police had found a small amount of the substance in a prescription bottle belonging to her. Farnsworth, a friend of Scalise, denied she told the police that she had been buying methamphetamine from Scalise for two years, insisting that she had told the officers that she *knew* Scalise for two years. She admitted Scalise used methamphetamine and that together they had used drugs, but denied any knowledge that Scalise was a dealer. Farnsworth described Scalise as a heavy drug user and close to being a drug addict.

Three witnesses testified for the defense. John Landis, a substance abuse counselor for the Mid–Eastern Council on Chemical Abuse, described the addictive nature of methamphetamine and the potential for developing tolerance to the drug. In his opinion, methamphetamine users could have in their possession between five and six grams of methamphetamine and for some people that amount would only last a couple of days, for others a week, and some could use that much in a day.

A drug evaluation in evidence indicated that Scalise was chemically dependent on methamphetamine. Landis testified he had counseled Scalise in connection with her dependency, thought she was using a gram a day, and believed she had been addicted to methamphetamine for several years. He also testified that not every methamphetamine user is gaunt and skeletal, that he had no knowledge that Scalise was dealing and, that, in fact, she had denied to him that she was dealing.

Billie Jo Weaver, Scalise's former boss, also testified for the defense. She testified

that one of the notes found in Scalise's purse that the police described as a drug note was actually a note about the money she owed Scalise unrelated to drug dealing.

The defense's final witness, Leisa Scalise, the defendant's sister, also testified about one of the notes found in the defendant's purse. Leisa testified that the note referred to a loan she had made to the defendant, who was making payments on it. Leisa also testified that she had loaned the defendant $600 in cash a few days before the arrest and believed that the money found in her sister's purse could have been from that loan. Leisa denied that the loan had anything to do with drugs and denied that she was aware that her sister had a drug problem.

The jury found Scalise guilty of possession of a controlled substance, methamphetamine, with intent to deliver. The jury also answered a special interrogatory, finding that the amount of methamphetamine was more than five grams. Following the verdict, the State dismissed the marijuana charge. The district court overruled Scalise's motion for new trial, sentenced her to an indeterminate term of incarceration not to exceed twenty-five years, and ordered her to serve one third of her sentence before being eligible for parole.

We recite additional facts relevant to the issues we discuss.

## II. Issues.

Scalise raises several issues. She first contends her trial counsel was ineffective because he failed to raise in the motion for judgment of acquittal that the State had to prove Scalise intended to deliver more than five grams of methamphetamine. Scalise also contends counsel was ineffective because he failed to object to the marshalling instruction and the special interrogatory on the grounds that the instruction and interrogatory failed to embody that same notion.

Another issue is her contention that counsel was ineffective because he failed to explain adequately the penalty for the charged offense. Because of such failure, Scalise claims her decision to proceed to trial was not fully informed.

The final issue is her contention that the district court erred in its ruling on her motion for new trial because the court applied the wrong standard. Her fallback position on this issue is that in the event we conclude the court applied the right standard, the verdict was contrary to the evidence and for that reason we should grant her a new trial.

## III. Error Preservation, Ineffective Assistance of Counsel, and Scope of Review.

Ordinarily, we do not consider issues raised for the first time on appeal. *DeVoss v. State,* 648 N.W.2d 56, 60–61 (Iowa 2002). The issues forming the basis of Scalise's claim of ineffective assistance of counsel fall into that category. However, we recognize an exception in the case of claims of ineffective assistance of counsel. *Earnest v. State,* 508 N.W.2d 630, 632 (Iowa 1993). We do so because as a practical matter these claims are not made by attorneys against their own actions. *State v. Lucas,* 323 N.W.2d 228, 232 (Iowa 1982).

Because Scalise's claims of ineffective assistance of counsel arise from her Sixth Amendment right to counsel, our review is de novo. *State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999). To prevail on these claims, Scalise must show that her trial counsel failed to perform an essential duty *and* that prejudice resulted from this failure. *State v. Greene,* 592 N.W.2d 24, 29 (Iowa 1999). Failing to perform an essen-

tial duty means counsel's performance fell outside the normal range of competency. *State v. Hepperle,* 530 N.W.2d 735, 739 (Iowa 1995). On this point, counsel is not incompetent for failing to pursue a meritless issue. *Greene,* 592 N.W.2d at 29. To establish prejudice, Scalise must show that the outcome of the trial would have been different. *State v. Horness,* 600 N.W.2d 294, 300–01 (Iowa 1999). Failure of proof on either the duty or prejudice prongs defeats the claim of ineffective assistance of counsel. *Greene,* 592 N.W.2d at 29.

 Ordinarily we preserve claims of ineffective assistance of counsel raised on direct appeal for postconviction relief proceedings to allow full development of the facts surrounding counsel's conduct. *State v. Atley,* 564 N.W.2d 817, 833 (Iowa 1997). We will resolve ineffective assistance of counsel claims on direct appeal when the record is adequate to decide the issue. *State v. Arne,* 579 N.W.2d 326, 329 (Iowa 1998). We conclude the record is adequate to resolve Scalise's claims as they relate to the motion for judgment of acquittal and jury instructions, so we proceed to consider those claims.

## IV. The Motion For Judgment of Acquittal.

 In the motion for judgment of acquittal, defense counsel stated: "It is our position that the state has not made a prima facie showing on the main charge of possession with the intent to deliver methamphetamine in excess of five grams." Counsel made no further argument or explanation, and the district court denied the motion.

Scalise argues that her trial counsel was ineffective because he failed to make clear the specific grounds for the motion: The State failed to present evidence regarding the *amount* of methamphetamine she *intended* to deliver. She is correct in her assumption that a motion for judgment of acquittal does not preserve error if trial counsel makes no reference to specific grounds. *See State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996). Scalise further contends she was prejudiced by her counsel's ineffectiveness because the jury would only have considered the lesser included offense of possession of methamphetamine with intent to deliver, which carries a lesser penalty. (The district court instructed on this lesser included offense.) Although we doubt trial counsel's motion lacked such specificity, we proceed as though it did.

We conclude Scalise was not prejudiced even if trial counsel did not make himself clear that the State was required to prove the amount of methamphetamine she intended to deliver. She therefore cannot establish her claim of ineffective assistance of counsel on this basis. *See Greene,* 592 N.W.2d at 29 (if either prong is lacking—ineffectiveness or prejudice—the court may affirm the conviction). This is so because viewing the evidence in the light most favorable to the state, we conclude there was substantial evidence from which the jury could find Scalise intended to deliver the charged amount. *See Westeen,* 591 N.W.2d at 206 (In evaluating whether substantial evidence exists, the court views the evidence in the light most favorable to the State.). For example, she had more than five grams of methamphetamine in her possession, and she admitted dealing. Police officers familiar with drug dealing testified the amount she had was consistent with dealing. This evidence, together with the "drug notes," scales, cash, and street value of what Scalise had in her possession, supports a reasonable inference that she intended to deliver the charged amount. Scalise was therefore not entitled to a directed verdict in her favor.

## V. The Instructions and Special Interrogatory.

Scalise challenges the district court's marshalling instruction (number 16) and

also instruction number 17 as well as the special interrogatory. The statute under which Scalise was charged provides:

[I]t is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance. . . .

. . . .

b. Violation of this subsection with respect to the following controlled substances ... is a class "B" felony ...

. . . .

(7) More than five grams but not more than five kilograms of methamphetamine. . . .

Iowa Code § 124.401(1)(b)(7).

The marshalling instruction—number 16—required the State to prove three elements: (1) on the date in question, Scalise knowingly possessed methamphetamine, (2) she knew that the substance was methamphetamine, and (3) she possessed the methamphetamine with the specific intent to deliver it.

An additional instruction—number 17—provided:

If you find the Defendant guilty of Possession of a Controlled Substance, To Wit: Methamphetamine, With Intent to Deliver, you must then determine the amount of the mixture or substance containing a detectable amount of methamphetamine. I have attached a question which must be answered, and by doing so, you will determine the degree or seriousness of the crime. In answering the question, the State must prove the amount of the mixture or substance containing a detectable amount of methamphetamine. You will check the blank next to the appropriate amount on the verdict form.

The special interrogatory provided:

If you find the Defendant guilty of Possession of a Controlled Substance,

To Wit: Methamphetamine, With Intent to Deliver, as contained in Verdict Form No. 1, you must answer one of the following in accordance with your findings:

1. We find the amount of methamphetamine to be more than five grams.

_____
Jury Foreperson

2. We find the amount of methamphetamine to be five grams or less.

_____
Jury Foreperson

The jury answered the first interrogatory, finding the amount of methamphetamine was in excess of five grams.

Scalise points out that the marshalling instruction only required the jury to find she possessed the methamphetamine with the intent to deliver. And instruction number 17 only required the jury to determine the amount of methamphetamine. Scalise argues that neither instruction number 17 nor the special interrogatory required the State to prove her possession of the statutory amount as well as her intent to deliver that amount. Finally, she contends that trial counsel's failure to object to the instructions on this basis resulted in a failure to preserve error and for that reason she was denied effective assistance of counsel.

The State counters by arguing it was not required by the statute under which Scalise was charged to prove Scalise intended to deliver more than five grams of methamphetamine. Therefore, according to the State, the instructions and special interrogatory did not have to reflect Scalise's interpretation of the statute. For reasons that follow, we disagree.

The statute—Iowa Code section 124.401(1)(b)(7)—clearly requires the State to prove that a defendant charged under the statute possessed with intent to deliver

the specified amount of controlled substance for which the defendant is convicted. The statute clearly indicates a higher charge for larger amounts of controlled substances where there is a "violation of *this* section *with respect to*" the larger amount. The statute unambiguously requires that the violation be "with respect to" and then sets out the specific amount of drug. In short, there must be possession with intent to deliver with respect to the specified amount of the drug. *See Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258 (Iowa 1995) ("When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute. . . .").

Although we agree with Scalise's interpretation of the statute, we reject her contention that the instructions and special interrogatories, which were based on Uniform Criminal Jury Instructions 2300.2 and 2300.7, do not reflect her interpretation of the statute.

■ We review jury instructions to determine if they are correct statements of the law and are supported by substantial evidence. *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). In our review, we read all of the instructions together, not piecemeal or in artificial isolation. *State v. Simpson*, 528 N.W.2d 627, 632 (Iowa 1995), *overruled on other grounds by State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002). Additionally, the district court may phrase the instructions in its own words as long as the instructions given fully and fairly advise the jury of the issues it is to decide and the applicable law. *Liggins*, 557 N.W.2d at 267.

■ With those principles in mind we turn to the instructions and special interrogatory. As mentioned, instruction number 16 required the State to prove that (1) Scalise knowingly possessed methamphet-

amine, (2) she knew the substance was methamphetamine, and (3) she possessed it with the specific intent to deliver it.

The jury could proceed to instruction number 17 only if they found Scalise possessed methamphetamine *with the intent to deliver*. Under instruction 17, the jury was told that if they found that Scalise possessed methamphetamine *with the intent to deliver* then they were to determine the amount in the special interrogatory. In the special interrogatory, the jury was again told that if they found Scalise guilty of possession of methamphetamine *with intent to deliver*, they were to determine if the amount was more than five grams or less than five grams.

We think that when read together, the instructions and the special interrogatory leave no doubt that the jury was to determine the amount of methamphetamine Scalise possessed as well as her intent to deliver *that amount.* The word "it" in element three ("she possessed *it* with the specific intent to deliver *it*") of the marshalling instructions refers to what she possessed—5.87 grams—when arrested. Moreover, Scalise's interpretation of the instructions and special interrogatory reads out of instruction number 17, the phrase, "with intent to deliver." Additionally, the special interrogatory gave the jury the choice to determine that less than the total amount possessed was possessed with intent to deliver. The conclusions we reach mean, of course, that Scalise fails on her claim of ineffective assistance of counsel. *See Greene*, 592 N.W.2d at 29 (counsel not ineffective for failing to purse a meritless issue).

## VI. Alleged Failure to Explain.

■ Regarding Scalise's claim that her trial counsel failed to explain adequately the penalty for violating Iowa Code section

124.401(1)(*b*)(7), Scalise and the State both agree that this claim of ineffective assistance of counsel should be reserved for a postconviction relief action. We agree because the record is inadequate to address the issue in that there is no evidence concerning just what trial counsel did or did not advise Scalise. *See Atley*, 564 N.W.2d at 833 (claims of ineffective assistance of counsel are ordinarily preserved for postconviction relief proceedings to allow full development of the facts surrounding counsel's conduct).

## VII. The Motion for New Trial.

Scalise last contends that the district court erred in denying her motion for new trial. In support of her contention, she argues that the district court used the wrong standard in denying the motion. For reasons that follow, we agree.

One of the grounds for new trial is that "the verdict is contrary to law or evidence." Iowa R.Crim. P. 2.24(2)(*b*)(6). In her motion for new trial, Scalise alleged that the verdict was contrary to the evidence because there was no record evidence of possession with intent to deliver. At the hearing, trial counsel argued more specifically that the weight of the evidence did not support a finding that Scalise intended to deliver the specific amount of methamphetamine for which she was charged.

 Scalise contends that when the district court denied her motion for new trial, it failed to make its own determination that the verdict was contrary to the evidence, as distinguished from finding that the evidence was legally sufficient. Scalise finds support for her contention in our decision in *State v. Ellis*, 578 N.W.2d 655 (Iowa 1998).

In *Ellis*, we explained that the language "contrary to the evidence" in rule 2.24(2)(*b*) means "contrary to the weight of the evidence," rather than "not supported by sufficient evidence." 578 N.W.2d at 659. We quoted with approval the following as to when and why trial courts must use the sufficiency-of-the-evidence standard or a weight-of-the-evidence standard:

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.

> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.

> . . . .

> The motion [for new trial] is addressed to the sound discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

*Id.* at 658–59 (quoting 3 Charles A. Wright, *Federal Practice and Procedure* § 553, at 245–48 (2d ed.1982)).

Therefore, on a motion for new trial based on the ground that the verdict was contrary to the weight of the evidence, the district court must "weigh the evidence and consider the credibility of the witnesses." *Id.* at 658. The court is not to approach the evidence from the standpoint "most favorable to the verdict." Rather, the court must independently consider

whether the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted. *Id.*

Here, the district court clearly used the sufficiency-of-the-evidence standard rather the weight-of-the-evidence standard. This is borne out by the italicized language in the court's ruling:

> *The court is commanded by law to view the evidence from the point of view most favorable to the jury's verdict,* and, as the state indicated, to not make decisions on such motions [for new trial] unless the verdict can be said to have been contrary to the weight of the evidence.
>
> . . . .
>
> *The court cannot in this case say that the jury's verdict is contrary to the bulk of the evidence or unsupported by the evidence in that respect [concerning the issue of intent] when the evidence and inferences that could be drawn from the views are drawn in the light most favorable to the jury's decision.* And for those reasons, the court overrules the motion for new trial, finding that the jury's verdict is supported by the evidence in this case.

(Emphasis added). In addition, we note the district court did not engage in any independent evaluation of the evidence or make any credibility determinations of the witnesses. In short, the court used the wrong standard thereby abusing its discretion in denying the motion for new trial.

## VIII. Disposition.

In sum, we conclude that Scalise has failed to establish her claims of ineffective assistance of counsel concerning the motion for judgment of acquittal and the jury instructions. We preserve for a postconviction relief action her claim of ineffective assistance of counsel concerning the alleged failure of trial counsel to explain adequately the penalty for violating Iowa Code section 124.401(1)(*b*)(7). We therefore affirm her conviction and sentence.

Scalise has, however, established that the district court abused its discretion in denying her motion for new trial by applying an incorrect standard. Our conclusion on this point makes it unnecessary for us to address her alternative claim that the verdict was contrary to the weight of the evidence, a matter that the district court should address on remand. We therefore reverse the district court's ruling denying Scalise's motion for new trial and remand the case for a new determination on that issue.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**