# IN THE COURT OF APPEALS OF IOWA

No. 19-0409
Filed August 5, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DEMETRIAS MARTIN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Demetrias Martin appeals his conviction for first-degree robbery.

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART AND REMANDED.**

Martha J. Lucey, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Ahlers, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

Demetrias Martin appeals his conviction for first-degree robbery. He claims trial counsel provided constitutionally deficient representation by failing to object to hearsay and prosecutorial error. Martin also claims the district court applied the wrong legal standard when assessing his motion for new trial. Finally, Martin argues the mandatory minimum sentence imposed must be vacated and he should be resentenced in accordance with the newly-enacted Iowa Code section 902.12(2A) (2019) because it is applicable to convictions occurring on or after July 1, 2018; the State agrees. We affirm Martin's conviction, vacate the sentence imposed, and remand for resentencing.

**I. Facts and Prior Proceedings**

The relevant events unfolded on July 22, 2017, and into the early morning hours of July 23. The players in this story are Martin, Justin Grice, Taylor Heinsen, and Addidas Williams. Martin is Grice's cousin.[1] Grice and Heinsen were dating. Heinsen was previously in a sexual relationship with Williams.

Grice and Heinsen spent July 22 together and began drinking around 2:30 or 3:00 in the afternoon. Early in the evening, they picked up Martin. The trio headed back to a hotel where Grice and Heinsen were staying for the weekend. But they headed out for a night on the town soon after. They spent much of the evening drinking and smoking marijuana.

Over the course of the evening, Williams became a topic of conversation. Grice expressed some animosity toward Williams. While the trio was at a bar

---

[1] Grice died on October 6, 2017.

around 9:00 p.m., Heinsen called Williams to locate some marijuana. Grice indicated he wanted to meet up with Williams because he was convinced Williams and Heinsen were still in a relationship. Heinsen believed Grice wanted to physically confront Williams. Grice also believed Williams would have marijuana and cash on his person when they met up.

Later Grice texted Williams from Heinsen's phone. Heinsen talked to Williams on the phone around 1:00 a.m. Cell phone records show texts between Heinsen's phone and Williams's discussing meeting up that evening.[2] The trio went to leave the bar, but Heinsen had some car trouble. Heinsen parted ways with Williams and Grice and travelled to her storage unit for some jumper cables.

Eventually the trio reunited, and Heinsen exchanged some phone calls with Williams. Williams texted Heinsen an address to meet up. Grice texted Williams from Heinsen's phone stating Heinsen was on her way. Again, Heinsen called Williams to discuss directions with Williams. Then, when Williams texted to inquire where the two were going to go, Grice texted from Heinsen's phone—seemingly impersonating Heinsen—and replied, "To my room." Grice again texted Williams from Heinsen's phone to confirm Williams's location.

Grice and Martin got out of Heinsen's car. Heinsen communicated with both Grice and Williams to try to get them to the same location. Williams was walking around looking for Heinsen and encountered Grice and Martin. Grice told Williams to "give it up" several times. Martin stood next to Grice as he made his demands.

---

[2] Both Heinsen and Grice texted Williams from Heinsen's phone without distinguishing their identity.

Then Grice pulled out a gun. Williams testified Martin tried to grab him to keep him from running away.

When Williams ran away, Grice and Martin chased after him, and Grice shot at him. Grice shot Williams in both legs—both were through-and-through injuries. Eventually, Williams collapsed and was discovered by police.

Police located Martin and Grice with Heinsen in Heinsen's car. They discovered a gun underneath the rear passenger seat where Grice was sitting. The chamber and magazine contained twelve bullets, but the gun was capable of holding sixteen rounds. Testing confirmed a shell casing recovered from the scene was shot by the gun discovered underneath the seat.

The State charged Martin with count I, first-degree robbery, and count II, willful injury resulting in serious injury. A jury found Martin guilty as charged. Martin filed motions in arrest of judgment and for new trial, which the district court denied. However, the court merged counts I and II and imposed a seventy percent mandatory minimum.

Martin now appeals.

## II. Scope and Standard of Review

We use differing standards of review for Martin's various claims. We review claims of ineffective assistance of counsel de novo. *State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020). When reviewing rulings on motions for new trial, we recognize "[t]rial courts have wide discretion in deciding motions for new trial." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). But when considering whether the district applied the correct standard, our review is for correction of errors at law. *State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007); *see also* Iowa R. App. P. 6.907.

And we review sentences imposed by the district court for errors at law as well. *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000).

## III. Discussion

On appeal Martin claims (1) he received ineffective assistance of counsel, (2) the district court applied the wrong standard when considering his motion for new trial, and (3) he should be resentenced in accordance with Iowa Code section 902.12(2A). We will address each claim in turn.

### A. Ineffective Assistance of Counsel[3]

We first address Martin's claim that his counsel was ineffective in a number of respects. Generally, ineffective-assistance claims are preserved for postconviction-relief proceedings so the record can be fully developed. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). But when the record is adequate, the claim may be resolved on direct appeal. *Id.* Here, the record is sufficient for review of Martin's claim of ineffective assistance of counsel on direct appeal.

To succeed on his ineffective-assistance claim, Martin must prove by a preponderance of the evidence that counsel failed to perform an essential duty and constitutional prejudice resulted. *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019). "Because the test for ineffective assistance of counsel is a two-pronged test, [Martin] must show both prongs have been met." *Nguyen v. State*, 878

---

[3] Iowa Code section 814.7 was recently amended to provide in pertinent part: "An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief" and "shall not be decided on direct appeal from the criminal proceedings." *See* 2019 Iowa Acts ch. 140, § 31. However, in *State v. Macke*, our supreme court held the amendment "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." 933 N.W.2d 226, 235 (Iowa 2019). Because this appeal was pending on July 1, 2019, the amendments "do not apply" to this case. *See id.*

N.W.2d 744, 754 (Iowa 2016).  If Martin cannot prove either prong, we need not address the other.  *See id.*

**1. Hearsay**

*a. Breach of duty*

First, Martin claims counsel was ineffective for failing to object to hearsay statements.

> "Hearsay 'is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted.'"  As a general rule hearsay is not admissible.  Hearsay can be admitted when the proffered evidence falls within one of the numerous exceptions to the hearsay rule.

*State v. Veverka*, 938 N.W.2d 197, 199 (Iowa 2020) (citations omitted).

Here, Martin claims the State offered certain portions of Heinsen's testimony regarding her conversations with Grice to prove the truth of the matter asserted and the statements did not fall within an exception to the hearsay rule.  Specifically, Martin takes issue with the following italicized testimony about Heinsen's conversations with Grice regarding her past relationship with Williams, which occurred outside of Martin's presence:

> Q. Did it appear to be eating at [Grice]?  A. Yes.
> Q. Did he ever express wanting to do something about it?  A. *He expressed that he would like to fight* [*Williams*]*.*
> Q. Did [Williams] become a topic of conversation the night of July 22nd?  A. Yes, he did.
> Q. In what sense?  A. The more that alcohol was ingested, *the more* [*Williams*] *would get brought up.*  [*Grice*] *felt he was disrespectful in a sense.*

Martin also takes issue with Heinsen's testimony regarding Grice's motivation for wanting to meet with Williams.  Again, the challenged testimony is in italics:

> Q. Now, I imagine that [Grice] has got a little bit to say about why he wants to get this meeting together?  A. Correct.

Q. What is going on about why this meeting is going to happen? What is he saying about why this meeting is going to happen? A. *He was claiming the meeting was happening because he swore up and down that there was relations going on between* [*Williams*] *and I.*
Q. And what did that mean he had to do about it? A. *I believe that he was going to have an altercation—maybe a physical altercation with him.*
Q. *Was* [*Grice*] *also aware that Addidas Williams was likely to be in possession of marijuana? A. He was.*
Q. *Would he have been—would he have believed that he might also be—have cash on him because he was known to sell marijuana? A. Yes.*
Q. *And then, he talked about those things, coming towards that meeting? A. Yes.*
Q. Was Mr. Martin present when those things were said? A. Yes.

The State responds by arguing Heinsen's testimony is not hearsay and, to the extent that it is hearsay, it falls within an exception to the hearsay rule.

*1. Statements by a co-conspirator*

The State argues the testimony is admissible as statements of a co-conspirator. *See* Iowa R. Evid. 5.801(d)(2)(E). "To admit evidence under this rule, the trial court must find [by a preponderance of the evidence] 'that there was a conspiracy, that both the declarant and the party against whom the statement is offered were members of the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy.'" *State v. Huser*, No. 10-2067, 2011 WL 6079120, at *9 (Iowa Ct. App. Dec. 7, 2011) (quoting *State v. Tonelli*, 749 N.W.2d 689, 694 (Iowa 2008)); *see Tonelli*, 749 N.W.2d at 694 (providing the court must find a conspiracy by a preponderance of the evidence).

"Conspiracy" has a broader meaning with respect to evidentiary determinations than it does with respect to the crime of conspiracy. *See Tonelli*, 749 N.W.2d at 694. "A conspiracy under the evidence rule includes 'a combination or agreement between two or more persons to do or accomplish a criminal or

unlawful act, or to do a lawful act in an unlawful manner.'" *Huser*, 2011 WL 6079120, at *9 (quoting *State v. Ross*, 573 N.W.2d 906, 914 (Iowa 1998)). "To determine whether a conspiracy exists, a court may consider the out-of-court statement as well as other evidence." *Id.*

The evidence in the record to establish a conspiracy between Martin and Grice for evidentiary purposes is razor thin at best. Certainly, Martin was with Heinsen and Grice as they discussed whether Williams would have cash and drugs on his person and hatched a plan to meet with him. Martin was with them when they communicated with Williams in an effort to locate him. Martin got out of Heinsen's car with Grice to meet up with Williams. But these events could have unfolded with Martin none the wiser to Grice's plan to physically confront Williams; Martin very well could have believed they were meeting Williams to purchase marijuana. In fact, Heinsen testified no one listening to her conversation with Grice would have believed they intended on doing anything other than buy marijuana from Williams.

Therefore, we think the evidence fails to establish by a preponderance of the evidence that Grice and Martin had an agreement to rob Williams when they met with Williams. Had counsel objected, the district court would not have made the required evidentiary finding that Martin and Grice were co-conspirators. Therefore, the statements were not admissible as statements of a co-conspirator and were hearsay. Martin's counsel breached an essential duty in failing to object.

*2. State-of-mind exception*

The State also claims Heinsen's testimony concerning Grice's statements is admissible under the state-of-mind exception to the hearsay rule because they

provide insight into Grice's state of mind or intent. *See* Iowa R. Evid. 5.803(3). But Grice's state of mind alone is not relevant unless it can be connected to Martin's conduct. *Cf.* Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.803:3 (Nov. 2019 Update) (noting there is division as to "whether a declarant's intent to act in conjunction with another person can be used to prove conduct of the declarant as well as the conduct of the other person"), n.19 (recognizing a declarant's state of mind or intention can be admissible with respect to a third party if independent evidence, which can be circumstantial, connects the declarant's statements of intent to a third party's activities).

Heinsen's testimony concerning Grice's statements would only be admissible to show that Martin, as an aider and abettor, had knowledge of Grice's state of mind or intent—that Grice believed Williams and Heinsen were engaged in a sexual relationship and he wanted to fight him. Heinsen testified she and Grice discussed his belief that she was in a sexual relationship with Williams and that he wanted to fight Williams before Martin joined them for the evening. After Martin joined the party, Grice continued to swear up and down that Heinsen was having a relationship with Williams. But Heinsen's belief that Grice wanted a physical altercation with Williams was likely based upon Grice's earlier statements before Martin joined the conversation. It is not clear from the record that Martin was present when Grice said he wanted to fight Williams. The State failed to prove Martin knew of Grice's statement that he wanted a physical confrontation with Williams. In other words, the State failed to connect Grice's state of mind to Martin's conduct. *Id.*

Therefore, Grice's statements that he wanted to fight Williams do not establish that Martin knew Grice's intent and are not admissible against Martin under the state of mind exception. So counsel breached an essential duty when counsel did not object to Heinsen's testimony.

*b. Prejudice*

However, because Martin brings his evidentiary claims under the rubric of ineffective assistance of counsel, we must determine whether the admission of Grice's hearsay statements prejudiced Martin. We conclude Martin is not entitled to relief because the outcome of the proceedings would not have changed by the exclusion of Heinsen's testimony. While the jury could have improperly attributed Grice's personal motive to rob Williams to Martin prejudicing him to some extent, any resulting prejudice did not rise to the level of *Strickland*[4] prejudice warranting relief.

"It is not enough for [Martin] to show that the errors had [only] some . . . effect on the outcome of the proceeding." *State v. Walker*, 935 N.W.2d at 881 (second alteration in original) (quoting *Strickland*, 466 U.S. at 693). In order to prove prejudice, Martin must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland*, 466 U.S. at 694). This level of prejudice requires the likelihood

---

[4] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

of a different result be "substantial, not just conceivable." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (citation omitted).

The jury convicted Martin of robbery in the first degree using the following marshalling instruction:

> 1. On or about the 23rd day of July, 2017, the defendant had the specific intent to commit a theft, or the defendant had knowledge that someone he aided and abetted had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant or someone he aided and abetted:
>       a. Committed an assault on Addidas Williams; or
>       b. Purposely put Addidas Williams in fear of immediate serious injury.
> 3. The defendant, or someone he aided and abetted:
>       a. Was armed with a dangerous weapon; or
>       b. Attempted to inflict a serious injury upon Addidas Williams; or
>       c. Inflicted a serious injury upon Addidas Williams.

Even without Heinsen's testimony concerning Grice's ill will toward Williams, the elements of the marshalling instruction are easily met. The evidence presented at trial establishes Martin and Grice confronted Williams together. Grice repeatedly told Williams to "give it up"—clearly indicating to Martin that Grice's had the specific intent to rob Williams. Martin continued to participate in the robbery by standing at Grice's side. Grice's plan became even more evident to Martin when Grice pulled a handgun from his waistband and pointed it at Williams. At that time, Martin tried to grab Williams to prevent his escape. Martin did not stop Grice, at least not until after Grice shot at Williams. After the shooting, Martin fled the scene with Grice. In doing so, he aided and abetted Grice's robbery and knew of Grice's specific intent to commit the theft. Grice, someone Martin aided and abetted, assaulted Williams by shooting him in legs with a handgun. All three

elements of the marshalling instruction are easily satisfied without regard to any consideration of the players' motivation for carrying out the robbery. Because Martin's conduct establishes he aided and abetted the robbery independent of Grice's hearsay statements, we have confidence in the outcome of the trial. We conclude Martin failed to establish prejudice. *See, e.g.*, *State v. Parker*, 747 N.W.2d 196, 211 (Iowa 2008) (declining to find prejudice when improperly admitted evidence "did not affect the outcome of the trial").

Therefore, Martin's ineffective-assistance claim fails on the prejudice prong.

**2. Prosecutorial Error**

Second, Martin claims counsel was ineffective for failing to object when the prosecutor committed error during closing arguments by arguing facts not in the record and arguing Martin changed his story since the time of the incident, suggesting that he lied. "Prosecutorial error occurs 'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on "excusable human error, despite the attorney's use of reasonable care." *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citation omitted).

Martin must establish some error occurred. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Then he must establish the error denied him a fair trial. *See id.* To determine whether Martin was denied a fair trial, we consider five factors: "(1) the severity and pervasiveness of the [error]; (2) the significance of the [error] to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the [error]." *Id.* at 877; *accord Schlitter*, 881 N.W.2d at

394 (stating the factors used to evaluate a prosecutorial misconduct claim "easily translate to an evaluation of prosecutorial error").

   *a. Facts not in the record*

   Martin argues counsel argued facts not in the record by stating in closing arguments that Martin had access to plenty of marijuana that night and that "one bullet is not going to miraculously strike two legs of a moving target."

   With respect to the prosecutor's claim that Martin had access to plenty of marijuana, we consider the prosecutor's characterization as a permissible inference from the evidence presented. *See State v. Shanahan*, 712 N.W.2d 121, 139 (Iowa 2006). The record established Martin, Heinsen, and Grice smoked marijuana throughout the evening and into the early morning hours of the next day. Heinsen still had marijuana in her purse. Characterizing the trio as having plenty of marijuana was a permissible inference not a fact outside the record. *See id.*

   With respect to the prosecutor's statement that "one bullet is not going to miraculously strike two legs of a moving target," we find the prosecutor implored the jury to exercise common sense rather than arguing a fact outside the record. Here, the number of shots fired by Grice was at issue. Martin claimed Grice fired once before he stopped Grice. But the State claimed Grice fired four times— pointing to Williams's testimony that Grice shot at him four times, Williams's injuries to both legs, and the fact that the gun's magazine could accommodate four additional bullets when police recovered the gun, suggesting Grice fired four times. But witnesses reported hearing only one gunshot, and only one shell casing was recovered at the scene. The prosecutor's statement merely pointed to how unlikely it was that Martin was correct and Grice only fired one bullet—managing to hit both

of Williams's legs as he ran away.  So we find the prosecutor did not argue facts outside the record.

*b. Insinuation Martin lied*

Martin also claims the prosecutor committed error during closing arguments by making the following italicized statements:

> And then, you're in a police station, and you think you're going to make things worse by telling them you were the hero by stopping a second shot at the victim?  He was in it up to his eyeballs, then and now.  *The difference being, eighteen months to think about, "Well, let's see what gets produced, and how can we weave it to our advantage?"*  His testimony has a self-serving aspect to it.  He has a motive to tell a different story now than he told to the police right after the incident.
> . . . .
> *The passage of time has allowed Mr. Martin to put his best spin on all the facts which he cannot deny,* but, again, using your common sense, he's not the hero here.
> . . . .
> He told Detective Levetzow, "I've never been to your city, sir. I've never been to Bettendorf."  *What did he testify to, that he went everywhere the evidence showed he had been.*  He said he didn't do anything.  He didn't know anything, didn't do anything, but he testified to you, he heroically stopped Justin Grice from shooting Addidas Williams . . . .

According to Martin, the identified language amounts to calling him a liar.  *See State v. Carey*, 709 N.W.2d 547, 558 (Iowa 2006) (noting use of the word "liar" is "inflammatory" and "improper").

However, "a prosecutor is still free 'to craft an argument that includes reasonable inferences based on the evidence and . . . when a case turns on which of two conflicting stories is true, [to argue that] certain testimony is not believable.'" *Id.* at 556 (alteration in original) (citation omitted).  But a prosecutor's statements should not amount to "unnecessary and over inflammatory means that go outside

the record or threaten to improperly incite the passions of the jury." *Id.* To determine of this occurred, we consider three factors:

> (1) Could one legitimately infer from the evidence that the defendant lied? (2) Were the prosecutor's statements that the defendant lied conveyed to the jury as the prosecutor's personal opinion of the defendant's credibility, or was such argument related to specific evidence that tended to show the defendant had been untruthful? [A]nd (3) [w]as the argument made in a professional manner, or did it unfairly disparage the defendant and tend to cause the jury to decide the case based on emotion rather than upon a dispassionate review of the evidence?

*Id.* (quoting *Graves*, 668 N.W.2d at 874–75).

The prosecutor did not call Martin a liar or express a personal opinion that Martin was lying. Rather, in a professional manner, the prosecutor argued reasonable inferences raising legitimate questions concerning Martin's credibility as a witness. Martin's testimony at trial differed significantly from what he told investigators shortly after the incident. Thus, it was reasonable to infer he was not telling the truth at some point. The prosecutor's argument related to specific evidence rather than a bare assertion that Martin was a liar. We do not think the argument was made in a disparaging manner that played on the jury's emotions. Rather, the prosecutor asked the jury to look as the case through an analytical lens.

Because we find the prosecutor did not commit error, defense counsel had no duty to object. Martin's ineffective-assistance claim fails.

**B. Motion for New Trial**

Next, Martin claims the district court applied the wrong legal standard to his motion for new trial. "Iowa Rule of Criminal Procedure 2.24(2)(b)(6) permits a district court to grant a motion for new trial when a verdict is contrary to the weight

of the evidence." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Id.* (citation omitted). "This standard differs from the sufficiency-of-the-evidence [standard] because it 'requires the district court to independently "weigh the evidence and consider the credibility of witnesses."'" *State v. Hellman*, No. 18-1179, 2020 WL 110283, at *2 (Iowa Ct. App. Jan. 9, 2020) (quoting *State v. Walden*, No. 18-0209, 2019 WL 6358300, at *9 (Iowa Ct. App. Nov. 27, 2019)). When applying the weight-of-the-evidence standard, the district court serves as "an independent trier of fact." *State v. Fister*, No. 15-1542, 2016 WL 6636688, at *6 (Iowa Ct. App. Nov. 9, 2016). "The district court errs by failing to 'engage in any independent evaluation of the evidence or make any credibility determinations of the witnesses.'" *Id.* (quoting *State v. Scalise*, 660 N.W.2d 58, 66 (Iowa 2003)).

Ruling from the bench on the motion, the district court denied the motion, stating:

> All right. Well, I'm not—I wasn't surprised to see a motion for new trial and motion in arrest of judgment because of the evidence in the case, and the defendant wasn't the shooter. Nobody says that—and the shooter has passed away, but I do agree with [the prosecutor] that what it came down to in this case was the victim's credibility over the defendant's credibility. They both testified, and their testimony was in contradiction because the victim didn't hear him say anything to stop the shooting, or do anything to stop the shooting after the gun was pulled out, and the victim testified that when he started to run, that the defendant reached out to grab him, and I understand the defendant's testimony was different; that the defendant said he didn't know the gun was there; that he didn't see the guy pull it out; that he tried to push the gun down and said, "What are you doing?" but the victim didn't hear him say anything like that. *And so, that's what we have jurors for, is credibility. They are the triers of fact for credibility of conflicting testimony. That's what the jury is there for, and I don't see any reason in this case to set [a]side the jury's verdicts, because*

*I think there was enough evidence in the case.* We know the crime happened. The victim came in. He was shot in an attempted robbery. He received serious injuries; still, I think, walking with a limp as a result of being shot. He identified the defendant as being there and as being a participant by being there the whole time and reaching out and grabbing his arm—trying to grab his arm so he couldn't get away.

*And so, I do find that the crime took place*; that the defendant was correctly identified; and that when it came down to exactly—We know he has to do more than just stand there. I mean, do more— Maybe that's not the right way to say it—do more than just be there*, but I think if you accept the victims testimony, which obviously the jury was free to do—and they did that—he was an active participant, and under aiding and abetting, they found him guilty of robbery first degree and willful injury, so I find that there was a—Let me see here. I don't think the verdicts are against the weight of the evidence for the reasons I just said, and I don't think it's contrary to the facts of the law in the applicable case for the reasons I said.*

And so, I'm going to overrule the motion for a new trial, and also, overrule the—For reasons I stated, that there was certainly— The weight of the evidence, there was certainly lots of evidence— Well, really, no question that the crime took place. It just came down to the defendant's involvement, and so, I'm going to also overrule the defendant's motion in arrest of judgment, and *this is what we have jurors for, and I think that their finding was in accordance with the credible evidence in the case and the law in the case, and so, I'm going to deny the motion for new trial . . . .*

(Emphasis added).

At first blush, this case might appear to be similar to instances where we determined the district court failed to apply the weight-of-the-evidence standard because it did not make independent credibility findings and instead relied on the jury's credibility findings. *See, e.g.*, *Hellman*, 2020 WL 110283, at *3; *Fister*, 2016 WL 6636688, at *6. The district court made repeated references to the jury as the trier of fact charged with making credibility determinations. The court did not see any reason to set aside the jury's verdict because there was enough evidence in the case.

However, the district court went on to summarize the evidence and stated, "this what we have jurors for, *and I think that their finding was in accordance with the credible evidence in the case* and the law in the case, and so I'm going to deny the motion for new trial." While the court spent considerable time discussing the jury's role in making credibility findings, it ultimately made its own determination that the jury's finding was in accordance with the credible evidence. Concerning the weight of the evidence, the court concluded that there was certainly ample evidence and really no question the crime was committed and Martin was involved.

The court did not refer to the sufficiency-of-the-evidence standard applicable to motions for judgment of acquittal. Nor is there indicia the court erroneously applied the sufficiency-of-the-evidence standard. *See State v. O'Shea*, 634 N.W.2d 150, 154–55 (Iowa Ct. App. 2001) (concluding the district applied the weight-of-the-evidence standard and not the sufficiency-of-the evidence standard when court did not view evidence in the light most favorable to the State); *cf. State v. Barrett*, No. 17-1814, 2018 WL 6132275, at *5 (Iowa Ct. App. Nov. 21, 2018) (declining to remand issue to district court and noting "the record does not affirmatively demonstrate error"). Rather, the court specifically articulated the weight-of-the-evidence standard and independently considered what evidence the court found was most credible. *See State v. Nitcher*, 720 N.W.2d 547, 560–61 (Iowa 2006) (concluding the district court applied the incorrect legal standard because the court did not specifically articulate what standard it applied and referenced motions that called for the sufficiency-of-the-evidence standard); *State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011) (remanding case for application of the weight-of-the-evidence standard because the district court

did not articulate what standard it applied and the record was ambiguous as to the standard applied). We conclude the court applied the correct legal standard and did not abuse its discretion denying Martin's motion for new trial. *See State v. Nuno*, No. 17-1963, 2019 WL 1486399, at *4 (Iowa Ct. App. Apr. 3, 2019).

### C. Resentencing

At the time of sentencing, March 14, 2019, the district court sentenced Martin to serve seventy percent of his sentence before being parole eligible, in accordance with Iowa Code section 902.12 (2017). Since that time, our legislature amended section 902.12 to include the following mandatory-minimum provision:

> A person serving a sentence for a conviction for robbery in the first degree in violation of section 711.2 *for a conviction that occurs on or after July 1, 2018*, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 2A.

2019 Iowa Acts ch. 140, § 8 (codified at Iowa Code § 902.12(2A)) (emphasis added). The legislature also provided sentencing courts factors to consider when determining the mandatory-minimum period of incarceration by adding:

> At the time of sentencing, the court shall determine when a person convicted of robbery in the first degree as described in section 902.12, subsection 2A, shall first become eligible for parole or work release within the parameters specified in section 902.12, subsection 2A, based upon all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons.

2019 Iowa Acts ch. 140, § 6 (codified at Iowa Code § 902.11(2A)).

Martin argues the change in law and its retroactive nature entitles him to resentencing to determine the length of his mandatory-minimum sentence considering the relevant factors. The State agrees. And we agree with the parties.

We note our review is for legal error and no one erred in this instance; the sentencing court, prosecutor, and defense counsel all followed the then-applicable law. But because the plain language of section 902.12(2A) makes clear it now applies to Martin, we must remand so he can be sentenced accordingly. *See State v. Fagen*, No. 19-0492, 2020 WL 1310319, at *3 (Iowa Ct. App. Mar. 18, 2020).

## IV. Conclusion

We affirm Martin's conviction and find the district court applied the correct standard when considering Martin's motion for new trial. We remand to the district court for Martin to be sentenced in accordance with Iowa Code sections 902.11(2A) and .12(2A).

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART AND REMANDED.**