# IN THE COURT OF APPEALS OF IOWA

No. 19-1453
Filed October 20, 2021

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**MARK JACOB HUMPHREY,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Mahaska County, Gregory G. Milani, Judge.

 Mark Humphrey appeals his conviction for third-degree burglary. **AFFIRMED.**

 Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

 Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Mark Humphrey appeals after a jury found him guilty of third-degree burglary. He contends insufficient evidence supports the jury's verdict, and the district court applied the incorrect standard in overruling his motion for new trial. Finally, Humphrey contends he received ineffective assistance from his trial counsel.

## I.    *Background Facts and Proceedings.*

N.B. was married to Humphrey in July 2018, but she had filed for divorce and obtained a protective order to prevent Humphrey from entering the home they once shared. When N.B. left the home to meet a friend on July 3, she locked the three dogs she and Humphrey shared in the garage. Her neighbor then saw Humphrey on the property "acting strange" by tampering with the camper that N.B.'s grandparents kept there and going in and out of the garage. After learning what her neighbor had witnessed, N.B. called the police and returned home. On arriving home, she discovered the camper was gone, the rear garage door was open, and the dogs were missing. Humphrey was ten miles from the house with the camper and two of the dogs when law enforcement stopped him.

At trial, Humphrey testified that he needed a place to live and decided to use the camper, which N.B.'s grandparents had allowed him to use in the past and discussed selling to him. He also claimed he had taken and returned the dogs on prior occasions after the protective order was in place. Humphrey testified that on July 3, he contacted the sheriff to retrieve belongings from the garage and waited two hours for their arrival without avail before opening the garage. He claimed that when he opened the garage door, two of the dogs jumped inside his truck while

the third dog ran off. He testified that he took the dogs with him because he could not move them from the truck, claiming he planned to return them later. He admitted he did not have permission to take the camper or the dogs that day.

## II. Sufficiency of the Evidence.

Humphrey first contends the district court erred in overruling his motion for judgment of acquittal because there is insufficient evidence to support his burglary conviction. We review this claim for correction of errors at law. *See State v. Donahue*, 957 N.W.2d 1, 7 (Iowa 2021). In doing so, we view the evidence in the light most favorable to the State, which includes legitimate inferences and presumptions that can be reasonably deduced from it. *See id.* We affirm if the record contains substantial evidence to support the conviction. *See id.* Evidence is substantial if it would convince a rational fact finder of the defendant's guilt beyond a reasonable doubt. *See id.*

The trial court instructed the jury that to find Humphrey guilty of third-degree burglary, the State had to prove he broke into or entered an occupied structure without permission or authority and with the specific intent to commit a theft therein. Humphrey challenges the sufficiency of the evidence on the latter element only, arguing "his mere temporary possession of the dogs and camper does not amount to an intent to commit a theft."

The court defined theft for the jury as

> 1. Taking possession or control of the property of another, or
> 2. Taking property in the possession of another
> without permission and with the intent to permanently deprive the other thereof.
> Regarding alternative 2 above, the State is not required to prove who owned the property at the time of the taking.

*See* Iowa Code § 714.1(1) (2018) (defining the crime of theft); *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999) (holding that an intent to permanently deprive another of property is an essential element of theft under section 714.1(1)). Because there is seldom direct evidence of a defendant's state of mind at the time of the act, we look to the surrounding facts, as well as any reasonable inferences drawn from them, in determining whether there is sufficient evidence to establish specific intent. *See Schminkey*, 597 N.W.2d at 789.

Humphrey argues the evidence is insufficient to show an intent to permanently deprive because he testified that he intended to return the camper and dogs to N.B. as he had in the past. The jury, however, "is free to believe or disbelieve any [evidence] as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). "In fact, the very function of the jury is to sort out the evidence and place credibility where it belongs." *Id.* (internal quotation marks omitted) (citation omitted).

Despite Humphrey's claims that he intended to return the camper and dogs, there is substantial evidence from which the jury could find he planned to permanently deprive his former wife of them. Humphrey admitted to taking the camper and dogs without permission. He did so when N.B. was out, in defiance of a protective order. Humphrey testified that he was living in his truck in July 2018 and took the camper to have a place to stay. The jury could infer that Humphrey's need for a residence was more than brief or temporary. And in contrast to his testimony that he planned to bring the dogs back, on cross-examination Humphrey admitted, "I want those dogs with me every second of every single day." *Cf.*

*Schminkey*, 597 N.W.2d at 792 (noting there were "no admissions by the defendant or statements from other witnesses that would indicate Schminkey's purpose in taking the vehicle"). On this basis, the jury could conclude Humphrey intended to permanently deprive N.B. of the camper and dogs.

Because substantial evidence supports the finding that Humphrey had the specific intent to commit a theft, we affirm the district court order overruling his motion for judgment of acquittal.

## III. *Weight of the Evidence.*

Iowa Rule of Criminal Procedure 2.24(2)(b)(6) allows the court to grant a new trial "[w]hen the verdict is contrary to law or evidence." A verdict that is contrary to evidence means that it is "contrary to the weight of the evidence." *State v. Nichter*, 720 N.W.2d 547, 559 (Iowa 2006) (citation omitted). Under this standard, the court weighs the evidence to determine whether a greater amount of credible evidence supports the jury's verdict. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). We review a trial court's ruling on a motion for new trial for an abuse of discretion, while a claim that the court failed to apply the proper standard in that ruling is reviewed for errors at law. *Id.* The court will grant a motion for new trial alleging the verdict is contrary to the weight of the evidence "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

Humphrey claims the district court failed to conduct an independent evaluation of the evidence, instead deferring to the jury's findings. The State concedes that in orally overruling both the motions for judgment of acquittal and new trial, the court cited only a sufficiency-of-the-evidence standard. But the court

then clarified on the record that it was using a weight-of-the-evidence standard in ruling on the motion for new trial. And in its written ruling, the court correctly cited the weight-of-the-evidence standard for the motion for new trial, noting there is no presumption favoring one side. The court then determined that the jury was not influenced by mistake, prejudice, or other cause in reaching its verdict. *See State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

While the district court did not specifically state that it had weighed the evidence or made its own credibility determinations, the failure to do so does not require reversal of the order denying the motion for new trial. "When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling." *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008). But where a proper basis appears in the record for the court's decision, we are obligated to affirm. *Id.* A proper basis appears from the record here.[1]

Humphrey's testimony was at times rambling, confusing, and contradictory. For instance, when asked whether he packed up the camper, Humphrey's digressive answer concluded with, "My response is that those dogs loved me. I loved those dogs, been away from them for two weeks." Although Humphrey

---

[1] We find this case to be distinguishable from those that have vacated a ruling on a motion for new trial for failing to apply the correct standard of review and weigh the credibility of witnesses independently. *See, e.g.*, *State v. Scalise*, 660 N.W.2d 58, 66 (Iowa 2003); *Nichter*, 720 N.W.2d at 559-60. We initially note that these cases pre-dated *Maxwell*, 743 N.W.2d at 192-93. And unlike the court in this case, the trials courts in *Scalise*, 660 N.W.2d at 66, and *Nichter*, 720 N.W.2d at 559-60, simply incorporated their rulings on the defendants' motions for judgment of acquittal in ruling on the new trial motions and, in doing so, viewed the evidence in the light most favorable to the verdict. *See State v. Nuno*, No. 17-1963, 2019 WL 1486399, at *4 (Iowa Ct. App. Apr. 3, 2019) (distinguishing *Scalise* and *Nichter* on the same basis). There is no similar problem here given the court's correct statement of the weight-of-the-evidence standard.

testified that he intended to return the dogs, he also testified that he wanted those dogs with him "every second of every single day."  He was unable to clearly explain what he intended to do when he went to N.B's house, testifying: "I just hadn't seen my dogs for—I'd been with that dog ever since he was basically born and I just missed him."  As for his intentions regarding the camper, Humphrey testified, "we had been discussing buying it . . . and we never got around to it."  When he was stopped by police, Humphrey was on his way to a campsite on the Des Moines River where he intended to stay "for a while."

"This is not a case where the evidence supporting the verdict was so scanty and the evidence opposing it was so compelling that the verdict must be considered contrary to the weight of the evidence."  *State v. Gilmore*, No. 11-0858, 2012 WL 3589810, at \*6 (Iowa Ct. App. Aug. 22, 2012).  The record contains conflicting evidence about Humphrey's intentions for the camper and dogs.  The district court implicitly found the State's evidence more credible than the defense. *See id.*; *see also State v. Boelman*, 330 N.W.2d 794, 795 (Iowa 1983) (presuming the court decided facts necessary to support its decision in the State's favor). While the denial of the motion for new trial was summary in nature, we cannot conclude it amounted to an abuse of discretion.  *See Gilmore*, 2012 WL 3589810, at \*6.

## IV.  Ineffective Assistance of Counsel.

Finally, Humphrey alleges his trial counsel provided ineffective assistance by failing to object to hearsay testimony.  Effective July 1, 2019, the legislature amended Iowa law to eliminate a defendant's ability to pursue a claim of ineffective assistance of counsel on direct appeal from a criminal conviction.  *See* 2019 Iowa

Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2020)). Humphrey challenges the amended statute on constitutional grounds, but our supreme court has rejected such claims. *See State v. Treptow*, 960 N.W.2d 98, 107-08 (Iowa 2021) (rejecting claims that the amendment violates a defendant's rights to equal protection of the law, due process, and effective assistance of counsel); *State v. Tucker*, 959 N.W.2d 140, 151 (Iowa 2021) (rejecting claim that the amendment violates the separation-of-powers doctrine).

Because Humphrey appealed after the amendment took effect, we cannot decide his claim. *See* Iowa Code § 814.7 (stating ineffective-assistance claims "shall not be decided on direct appeal"); *accord State v. Warren*, 955 N.W.2d 848, 856 (Iowa 2021) (limiting consideration of ineffective-assistance claims to direct appeals pending on July 1, 2019). He may pursue it in a postconviction-relief proceeding. *See* Iowa Code § 814.7 ("An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822."). We reject Humphrey's invitation to adopt a plain error rule based on our supreme court's rejection of similar arguments. S*ee Treptow*, 960 N.W.2d at 109.

**AFFIRMED.**